JAMES N. ETTRIDGE *vs.* WILLIAM BASSETT & another.

Suffolk.  Nov. 14, 1883. — Jan. 4, 1884.  C. ALLEN & HOLMES, JJ., absent.

N. conveyed land, by warranty deed, to B., who mortgaged back the land to N. They also entered into a written agreement, which recited the conveyance and the mortgage; that the mortgage was made in contemplation of the erection by B. of a building on the land, and of an advance of money by N. to B. in consideration of the mortgage, the price of the land forming the remainder of the consideration; that B. agreed to erect and complete the building within a time named; that, upon default by B., N. might complete the building at B.'s expense, all sums so expended to be considered as secured by the mortgage; and that any liens claimed on the building and land might be settled by N., and any sums so paid should be charged as advances under the mortgage. The deed, mortgage, and agreement were executed and delivered at the same time, which was seven days after their date, and as parts of the same transaction. Between the time of such date and delivery, B., without the authority of N., hired E. to work on the building to be erected, and E. continued such labor for two months, when he ceased, and seasonably filed a certificate of lien therefor, and prosecuted a petition to enforce the same. The mortgage was previously assigned by N. to a person who had no notice of the agreement between B. and N., and who foreclosed the same; and the title, by mesne conveyances, became vested in N., who defended the petition. *Held*, that the petition could not be maintained.

PETITION to enforce a mechanic's lien. Trial in the Superior Court, without a jury, before *Gardner*, J., who reported

the case for the determination of this court, in substance as follows:

It appeared that, prior to August 20, 1881, Benjamin B. New-hall was the owner of the land described in the petition, and on that day he made an absolute conveyance of the same, free from incumbrances, by warranty deed, dated August 13, 1881, to the respondent Bassett; and, the land having been divided into three lots, Bassett made a mortgage back to Newhall on each of said lots, one for $5500, one for $6500, and one for $8000. An agreement in writing was entered into on said August 13, between Newhall and Bassett, which recited the conveyance above mentioned, and that Bassett proposed to erect certain buildings on the three lots; the execution of the above-named mortgages, and that they were made in contemplation of the erection of said buildings on the land, and of the advance of $11,000 by Newhall to Bassett in consideration of the mortgages, the price of the land forming the remainder of the consideration; that Bassett agreed to erect and complete said buildings within a time named; that, if the work on the buildings was discontinued, Newhall might prosecute the same to completion at Bassett's expense, all sums so expended to be considered as secured by the mortgages; and that any liens claimed on said buildings and land might be settled by Newhall, and any sums so paid should be deemed part of the advance above provided for, and be secured by the mortgages. The warranty deed, mortgages, and agreement were executed and delivered at the same time, and as parts of the same transaction. Bassett paid no money and gave no other consideration for the warranty deed than the mortgages, and as is set out in the written agreement. The warranty deed and the three mortgage deeds were all duly recorded on August 20, 1881. On September 10, 1881, Newhall assigned said mortgages to one Poor, to obtain money to carry out the agreement, Poor having notice of said agreement; and subsequently Poor assigned the mortgages to other persons, who had no notice of said agreement, but who knew that the buildings were under construction and unfinished. Immediately after the delivery and recording of the deed and mortgages, Bassett commenced the masonry-work of the buildings, and Newhall advanced money to him, from time to time, until December 5, 1881, when

Bassett failed to continue the work and left it in an unfinished condition, and at that time the cash advances from Newhall amounted to $5500; and Newhall, under the agreement, then took charge of the work and finished the buildings. The purchase money of the land, the sums advanced by Newhall to Bassett, and the money laid out by Newhall in completing the buildings, amounted to more than the amount of the three mortgages.

On August 13, 1881, Newhall and Bassett orally agreed upon the transaction, which was reduced to writing on August 20, 1881; and a few days before said August 20, Bassett requested the petitioner to assist him in the construction of the buildings by superintending the work and doing a part of the same, and the rate of wages of the petitioner was then agreed upon, and some preparations were made by them in examining materials to be purchased, and in ascertaining the lines of the land to be built upon. On August 24, the petitioner commenced the masonry-work under the direction and in the employ of Bassett, and continued the same until he ceased, on November 19, 1881; and, within thirty days thereafter, he duly filed his certificate of lien in the registry of deeds, and commenced this action on February 16, 1882.

It also appeared that Newhall did not authorize Bassett to do any work on the land before the conveyance thereof, on August 20, 1881, and after that day their relations to each other were regulated by said written agreement; and that, some time after this action was commenced, said mortgages were foreclosed by the assignees thereof under the powers of sale therein, and Bassett's interest in the premises was thereby extinguished, and subsequently, by mesne conveyances, Newhall became the owner by title under such foreclosure.

Newhall, having filed an answer, now contested the petitioner's action; and contended that his interest as mortgagee when the labor was performed, and his present title under the foreclosure, were not subject to the petitioner's claim.

The judge ruled that Newhall was in the position of an owner under the statute, and that the lien was established.

If such ruling was correct, the petitioner was to have a decree of sale; otherwise, the petition to be dismissed.

*G. W. Park,* for the respondent.

*J. A. Maxwell,* for the petitioner.

COLBURN, J. Before August 20, 1881, Bassett had no title to the land, and although, on August 13, 1881, Bassett and New-hall made an oral agreement as to the terms of the transaction, which was carried out and put in writing on August 20, Bassett had no authority from Newhall to do any work upon the land before August 20. Under these facts, Bassett could not subject the land to any lien before August 20. *Hayes* v. *Fessenden,* 106 Mass. 228.

By the deed and mortgages of August 20, Bassett had but an instantaneous seisin of an unencumbered estate, and had noth-ing more than an equity of redemption to which any lien could attach. *Burns* v. *Thayer,* 101 Mass. 426. *Perkins* v. *Davis,* 120 Mass. 408. The mortgages to secure the purchase money of the land, and for future advances, were valid mortgages. *Commer-cial Bank* v. *Cunningham,* 24 Pick. 270. *Goddard* v. *Sawyer,* 9 Allen, 78. See also *Brooks* v. *Lester,* 36 Md. 65 ; *Moroney's appeal,* 24 Penn. St. 372. In *Dunklee* v. *Crane,* 103 Mass. 470, and *Amidon* v. *Benjamin,* 126 Mass. 276, upon which the peti-tioner relies, — in the former of which it was held that a lien had priority over a mortgage, and in the latter, that a lien was not affected by an absolute conveyance, — the persons who made the agreements under which the liens were claimed were the owners of the lands at the time the agreements were made.

The petitioner's lien was subject to the mortgages, unless the agreement, which was executed as part of the same transaction with the deeds and mortgages, enlarged his rights. Apparently the only purpose of Newhall was to effect a sale of his land, and get security for the purchase money and the money he was to advance, and that of Bassett to acquire title to the land and ob-tain sufficient advances of money to enable him to improve the property for his benefit. It was necessary that Bassett should have an agreement to show what he had received on the mort-gages, and the amounts of future advancements, and the terms and conditions upon which he should be entitled to them, and it was necessary that Newhall, who had received no money for the land, should have an agreement showing what Bassett was to do upon the land to furnish security under the mortgages for the

purchase money and future advances, and when he should do it, and what the mortgagee's rights should be in case of Bassett's default.

Under the agreement, Newhall had, and could have, no title or interest in the land or buildings, except such as he had under the mortgages. His security might be increased, but his title or interest could not be enlarged by any improvements made upon the land. He was only a creditor holding a lien under the mortgages, and, since the mortgages were given, has never acquired any title except under them and their foreclosure. He could in no legal sense be held to be in the position of an owner. *Goodwin* v. *Richardson*, 11 Mass. 469.

We find nothing in the agreement from which it can be inferred that Newhall assented that any lien should take precedence of the mortgages. The clause providing that claims for liens might be settled by the mortgagee, and the amounts paid to settle them charged as advances under the mortgage, we infer to have been inserted as a precaution on the part of the mortgagee, to enable him to relieve himself from any annoyance, delay, or litigation to which he might be subjected upon Bassett's default; but there is nothing in it which enlarged the petitioner's right of lien.

In *Hilton* v. *Merrill*, 106 Mass. 528, and *Smith* v. *Norris*, 120 Mass. 58, upon which the petitioner relies, the persons making the advances for the erection of buildings, and against whom the liens were claimed, were the absolute owners of the lands upon which the buildings were being erected during the time the labor was being performed for which the liens were claimed.

*Petition dismissed.*