Universal Credit Company, a Corporation, Appellant, v. Ritchie L. Enyart, Respondent.—98 S. W. (2d) 120.

Kansas City Court of Appeals. November 9, 1936.

*J. W. McKnight* for appellant.

*F. P. Stapleton* for respondent.

BLAND, J.—This is an action upon what is termed a "mortgage note contract," signed by the defendant as maker. The execution of the instrument was admitted by the pleadings, the defense being a lack of consideration. The case was tried before a jury, resulting in a verdict in favor of the defendant. Plaintiff has appealed.

The facts show that in the years of 1933 and 1934 one J. L. Enyart, now deceased, was a retail dealer of Ford automobiles in the city of McFall carrying on his business as the J. L. Enyart Motor Company; that in the latter part of 1933 he purchased an automobile from the Ford Motor Company and the same was shipped from Kansas City by it to him. It appears that Enyart did not pay cash for cars sold and delivered to him by the Ford Motor Company but gave mortgages on them on what is known as the "Floor Plan;" that on December 30, 1933, he gave to the Ford Motor Company a chattel mortgage in the sum of $950, upon the vehicle in question, being the balance due upon the car. This mortgage was duly sold and assigned by the Ford Motor Company to plaintiff at Kansas City. Thereafter it was represented to plaintiff, whose office was in Kansas City, that on April 12, 1934, the car had been sold to Ritchie L. Enyart by the

defendant, J. L. Enyart, and that the car had been sold on the "salesman's plan for use as a demonstrator." On the 12th day of April, 1934, the defendant executed the note in suit and chattel mortgage on the car to J. L. Enyart, the note securing the payment of the balance of the purchase price of $565.32, payable in eleven monthly installments of $25 each with a balance of $290.32 coming due twelve months after the date of the instrument. This instrument stated that defendant had purchased from J. L. Enyart the automobile "delivery and acceptance of which is hereby acknowledged" by the defendant. The note and mortgage on its face disclosed that it was contemplated that it would be assigned to the plaintiff, Universal Credit Company, and, in fact, the note and mortgage were duly assigned to the plaintiff by Enyart on April 14, 1934.

In connection with the execution of this instrument J. L. Enyart executed a writing headed "Dealer's Work Sheet," in which it was stated that the car had been sold for $786.32 on "the salesman's plan" for use as a demonstrator; that the amount of the down payment was $221; that the balance to be paid was $565.32. On the back of the work sheet appeared a form headed "Purchaser's Statement," which was duly filled out and executed by the defendant on the 12th day of April, 1934. This statement was addressed to Enyart and the Universal Credit Company, plaintiff herein, and stated that the defendant, the purchaser of the car, was employed by Enyart Motor Company as saleslady and bookkeeper and had been so employed for twenty years; that her monthly income was $75 and further stated that the undersigned "warrants the truth and accuracy of the foregoing information which is offered for the purpose of obtaining credit from the source first named herein," (meaning Enyart and the plaintiff) and authorized the Universal Credit Company (plaintiff) to purchase fire and theft insurance on the car. The statement was signed by the defendant and witnessed by J. L. Enyart. Plaintiff, on April 14, 1934, purchased the note and mortgage, paying therefor the sum of $520.52. The chattel mortgage was duly assigned to the plaintiff and plaintiff received the dealer's work sheet and the purchaser's statement. Three payments were made upon the note of $25 each and no further payments were made, resulting in this suit. There is a dispute as to whether defendant made any of these payments.

A letter, addressed to plaintiff, dated August 16, 1934, and purporting to have been signed by the defendant, was introduced in evidence by plaintiff. This letter was upon a form furnished by plaintiff and was in respect to insurance upon the car. It gave a description of the car and number and referred to the "purchase" of the car by the defendant. Defendant refused to say positively that she signed this letter. She said the signature "resembled" hers. Plaintiff introduced evidence tending to show that it was her signature.

Plaintiff as a part of its case in chief introduced the written evidence referred to supra, upon which it relied for estoppel. Thereafter, over the objection of plaintiff, defendant was permitted to testify that she did not buy the car and that she did not receive it, did not use it and received nothing for the giving of the instrument sued upon. She testified that she was the wife of J. L. Enyart but was not employed by him or the Enyart Motor Company and received no salary but "assisted" her husband at his place of business for a number of years; that she was neither a bookkeeper nor a saleslady; that her duties were keeping the place of business clean and that she took care of the labor tickets and that she wrote checks for the company "once in a while;" that she had neither demonstrated nor sold a car.

There is no evidence or contention that plaintiff was informed otherwise as to defendant's connection with the Enyart Motor Company than was represented in the purchaser's statement or that she actually purchased the car as stated in the chattel mortgage and purchaser's statement.

The car in question, after the execution of the instrument sued upon, was used as a demonstrator by the Enyart Motor Company at McFall and was sold by it through one Adams, a salesman for it, on or about June 12, 1934 to one Orville F. Gillespie, of Effie, Minnesota, and was apparently taken to that state.

Estoppel was pleaded by plaintiff as against defendant to set up a lack of consideration given by her for the execution of the instrument sued upon.

Defendant submits in her brief that the issue to be determined by this court is whether she is estopped to deny that the note was given without consideration. We will determine this appeal as it is thus submitted to us.

It is admitted that the instrument sued upon and executed by the defendant is nonnegotiable and defendant relies upon the rule that an assignee of a nonnegotiable instrument acquires a no greater right against the debtor than the assignor had against him at the time of the assignment and it is insisted by the defendant, and it may be assumed, that in the hands of J. L. Enyart, the instrument sued upon would have been subject to the defense of lack of consideration as made by the defendant in this case. However, it is well settled that this general rule is subject to the exception that the debtor by his representation or conduct may estop himself to impose against the assignee such defenses as would have been otherwise available to him against the assignor. [Sec. Inv. Co. v. International Shoe Co., 5 S. W. (2d) 682; 5 C. J., p. 966.]

The question to be determined is whether or not the statement in the chattel mortgage that defendant had purchased the car in question, and that delivery of it had been made and the car accepted,

estops her from claiming that, in fact, there had been no such delivery or acceptance of the car by her. We think, under the circumstances in this case, there is no question but that she should be estopped. In connection with the transaction she signed the purchaser's statement, which was for the purpose of obtaining credit from the plaintiff, and she, in effect, represented that she was the purchaser of the car, giving her occupation and monthly income and authorizing the plaintiff to insure the car against fire and theft. There was a clear representation on her part that she had purchased the car and that it had been delivered and accepted by her. She knew that the note and mortgage were to obtain money from the plaintiff, and for this purpose, were to be assigned to it. Under all of the circumstances we think she should not be allowed to set up the defense. [Fugate v. Hanford's Exr's, 13 Ky. 262; Norman F. Thiex v. Gen. Motor Accep. Corp., 259 N. W. 855; Edgar v. Kline, 6 Pa. 327, 331; Humphrey v. Tozier, 154 Pa. 410; Cunningham v. City of Iola, 86 Kans. 239.]

While lack of consideration for the giving of an instrument of this kind may be shown by the maker thereof under the provisions of section 954, Revised Statutes 1929, this statute has no application where the doctrine of estoppel comes into play.

Defendant admits that if, after the execution of the instrument sued upon, plaintiff had contemplated buying the same from J. L. Enyart and it had approached her and asked her whether she had purchased and accepted delivery of the car and she had answered in the affirmative, she would have been estopped to set up the defense of lack of consideration relied upon in this case. However, defendant states:

"We say that to estop a debtor from making the same defense against the assignee as he had against the assignor that the representations or conduct must have arisen not from the instrument itself but subsequent to the execution thereof."

No authority is cited supporting this assertion of the defendant. We see no logical reason for any distinction being made between a representation made in the instrument or at the time it was executed and one made subsequent to its execution. Here, defendant, knowing that the note would be sold and transferred to the Universal Credit Company and was made for the purpose of obtaining credit from that company, made a clear, positive and specific representation concerning the sale of the car to her, to-wit: That she had purchased the car, delivery had been made and that she had accepted the same. Under such circumstances we think under the authorities cited, supra, the doctrine of estoppel applies against her.

We have examined the cases cited by the defendant and find them not in point. In the case of Farmers Natl. Bank, etc., v. Stanton, 182 N. W. 647, no representation whatever was made by the maker of the note. There was no question of a positive and explicit representation

of the receipt of the specific consideration for the instrument, as appears in the case at bar.

In the case of Standard Furnace Co. v. Roth, 156 Atl. 600, the note contained a certificate of no defense. The note was given to pay for the installation of a heating furnace and was payable in seventeen monthly installments. The note was afterwards assigned. The defense was that the furnace was not installed in accordance with the terms of the agreement. The contract and the note were executed prior to the installation of the furnace and, of course, the "no defense" clause in the note was inserted prior to the installation. The representation made by the "no defense" clause could not have been more than a statement that the maker, *at the time of the execution of the note,* had no defense to the contract. There was no representation as to what transpired thereafter. Therefore, it would appear that this statement of no defense meant nothing further than *that at the time of the execution of the note* it was a valid and subsisting obligation.

We have examined the case of Southwest Contract Purchase Corp. v. McGee, 296 S. W. 912, cited by the defendant, and find no similarity between it and the case at bar.

Being of the opinion that defendant is estopped from setting up a lack of consideration for the giving of the instrument sued upon, the judgment is reversed and the cause remanded with directions to the lower court to enter judgment upon the instrument in favor of plaintiff. All concur.