250 S.W.2d 181 (1952)
UNITED FINANCE PLAN, Inc.
v.
PARKVIEW DRUGS, Inc.
No. 21703.
Kansas City Court of Appeals, Missouri.
June 2, 1952.
*182 Philip L. Levi, Julian M. Levitt, Kansas City, for appellant.
George V. Aylward, William B. Teasdale, Kansas City, for respondent.
SPERRY, Commissioner.
United Finance Plan, Inc., plaintiff, hereafter designated "United," sued Parkview Drugs, Inc., defendant, hereafter known as "Parkview." United sued as the assignee of certain invoices for goods sold to Parkview by one Koviss, d/b/a Continental Distributing Company, hereafter referred to as "Continental," totaling $975.31. Parkview claimed set-offs to the amount of $975.31, which were for goods delivered to Continental under contract. The case was submitted to the court on an agreed statement of facts. Judgment was for United in the sum of $975.31 and Parkview's claimed set off was disallowed. Parkview appeals.
The stipulation of facts filed herein, after reciting the identity of the various parties involved, proceeds, with minor deletions and condensations, as follows:
"4. On January 5, 1949, the said Allen Koviss, doing business as Continental Distributing Company, (hereinafter referred to as `Continental') entered into an agreement with the said Parkview Drugs, Inc. (hereinafter referred to as `Parkview') whereby Continental agreed to sell Parkview new and used phonograph records at specified prices on a guaranteed sales basis, which means that Parkview had the right at any time it decided the goods were not saleable to require Continental to take the goods back and give Parkview full credit, unless the merchandise had become damaged. * * *
"5. By the terms of the said agreement * * * Continental agreed to accept from Parkview certain merchandise, consisting of certain phonograph records and albums which Parkview had on hand on January 5, 1949 and which it did not desire to carry in stock if it took on the Continental line, at an agreed upon price of manufacturer's list less 10%, and to give Parkview credit therefor. These records and albums were located at Parkview Store No. 1, located at 46th and Virginia, and store No. 9 at 27th and Benton, and the Parkview warehouse at 24th and Grand, Kansas City, Missouri which records and albums agreed to be taken over by Continental amounted to the following sums at manufacturer's list less 10%: At store No. 1, $291.88; at Store No. 9, $340.57, and at the warehouse, $231.
"6. The phonograph records and albums referred to in paragraph 5 above were set aside for Continental at Parkview Warehouse and Store No. 1 and Store No. 9 and, on January 25, 1949, pursuant to the provisions of the agreement with Parkview referred to in paragraph 5 hereof, Continental picked up at the Parkview Warehouse the records and albums referred to in paragraph 5 hereof, and, on February 4, 1949, Continental picked up at Parkview Store No. 1 and Parkview Store No. 9 the balance of the phonograph records and albums. * * *
"7. Pursuant to its agreement, Parkview purchased phonograph records from Continental, commencing on January 5, 1949, and continuing on subsequent dates until February 24, 1949. A separate invoice was made by Continental on each sale made to a Parkview store and, after the sale was made, Allen Koviss of Continental took the invoice to United Finance Plan, Inc., (herein referred to as `United'), assigned the invoice to United and United paid Continental for said invoice. Then United would mail the invoice to Parkview with the following notations stamped thereon:
" `This account is owned by, and is payable only to:
United Finance Plan, Inc.,
819 Broadway,
Kansas City 6, Mo.'
*183 " `If this bill is not found to be correct in all respects, notify united
Finance Plan, Inc., at once.
No returns without the written consent of United Finance Plan, Inc.
"8. On February 10, 1949, Parkview received a statement from United, dated February 8, 1949, for invoices dated January 5, 1949 to and including February 4, 1949. Under date of February 15, 1949, Parkview issued its checks to United in payment of invoices dated January 5, 1949, to and including January 27, 1949. These checks were received by United on February 16, 1949. The said payment by Parkview to United covered 3 invoices subsequent to January 25, 1949, on which date Continental picked up merchandise of the value of $231.00 from the Parkview warehouse, and for which Parkview claims an offset against United. * * * These checks from Parkview to United were issued 21 days after the first delivery of `on hand' merchandise to Continental, and no deduction nor claim of deduction for any credit was made by Parkview at the time these payments were made by Parkview to United.
"9. On February 17, 1949, Parkview received a registered letter from United, dated February 16, 1949, in which United advised Parkview that it (United) had entered into an arrangement with Continental whereby it had purchased and would continue to purchase Continental's accounts receivable, and enclosed a letter from Continental Distributing Company, Allen Koviss, addressed to Parkview, dated February 16, 1949, which advised Parkview that Continental had entered into an arrangement with United whereby it had sold to United all of its accounts receivable and further advised that all future accounts would be sold to United. The Continental letter of February 16, 1949, listed the invoices dated February 4, 1949 to and including February 14, 1949, as accounts already sold to United.
"10. Parkview by letter dated March 4, 1949, in answer to United's letter of February 16th, notified United that Continental was indebted to Parkview in the amount of $863.45 for merchandise purchased from Parkview. This was the first notice that United had of any claimed indebtedness due from Continental to Parkview.
"11. Following the United letter of February 16, 1949, referred to in paragraph 9 hereof, four invoices dated February 23, 1949, and one dated February 24, 1949, totaling $194.85, were sold to United by Continental.
"12. The said Allen Koviss left Kanas City late in February, 1949, and neither United nor Parkview has heard from him since.
"13. The invoices sued upon herein were itemized in chronological order by United on a statement it sent to Parkview, dated March 2, 1949, on which Continental invoice No. 887, dated February 4, 1949, was the first, and invoice No. 1000, dated February 24, 1949, was the last. Invoice No. 887, dated February 4, 1949, was received by Parkview on February 7, 1949, and was the first invoice of those sued on herein to be received by Parkview, and February 7, 1949, was the earliest date on which any of the invoices sued on herein by United was received by Parkview. Invoice No. 887 and all subsequent invoices to and including No. 1000 dated February 24, 1949, contained the stamped notices referred to in paragraph 7 hereof.
"14. At the time this suit was brought, Parkview had on hand 933 phonograph records of the value of $111.86 which it had purchased from Continental under its agreement with Continental, referred to in paragraph 4 above, which it considered unsaleable and which were undamaged, and by its answer duly filed herein in the Magistrate Court, Parkview offered to return to Continental the said 933 phonograph records of the value of $111.86.

*184 "15. Prior to January 5, 1949, and prior to the time that any agreement was entered into between Parkview and Continental, Charles Hipsh, President of United, introduced Allen Koviss of Continental to H. J. Witschner, General Manager of Parkview, and advised Mr. Witschner that United had been buying some of Continental's accounts receivable.
"16. On March 22, 1949, at conference held at the office of Parkview, attended by Witschner, Parkview General Manager, H. C. Buckner, Comptroller of Parkview, and Hipsh of United, Buckner stated that `he did not know the accounts were factored until he received the registered letter of United dated February 16, 1949; that he then called Mr. Poisner, the record buyer for Parkview, and inquired of Poisner as to the situation in regard to the Continental accounts. Poisner stated to Buckner he knew the account had been sold because each invoice was so stamped.'
"17. At no time did United inquire of Parkview whether Continental was indebted to Parkview, or what the conditions of the sales agreement between Continental and Parkview were."
Under the above facts defendant would be entitled to set off the claimed amount, if this suit were being maintained by Continental. Universal Credit Company v. Enyart, 231 Mo.App. 299, 98 S.W.2d 120, 121.
Parkview says that, since it had a set-off as against Continental, based on facts existing at the time of the assignment by Continental to United, that therefore, United's claim against Parkview, based on its purchase and ownership of invoices sued on, is subject to set-off in this action just as it would have been against Continental. It cites and relies on Restatement of the Law of Contracts, Volume 1, Section 167.
The general rule is that the assignee of a non negotiable obligation occupies exactly the same position with respect thereto that his assignor occupied. United Shoe Machinery Co. v. Ramlose, 210 Mo. 631, 653, 654, 109 S.W. 567. Such assignee takes subject to all defenses that might have been made against it while in the hands of the assignor at the time of assignment. Sumrall v. Sun. Mut. Ins. Co., 40 Mo. 27; Securities Inv. Co. v. International Shoe Co., Mo.App., 5 S.W.2d 682, 684; Sections 431.160, 509.480 RSMo 1949, V.A.M.S.
United does not contend that the law is otherwise than above stated, nor that Parkview could not have maintained its claimed set-off in a suit by Continental based on the invoices here sued on; but it contends that Parkview is estopped from interposing its set-off as a defense against it. Equitable Estoppel or estoppel in pais, is defined as follows:
" `* * * the principle by which a party who knows or should know the truth is absolutely precluded, both at law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion were allowed.' " Sidney Weber Inc. v. Interstate Motor Freight System, Mo.App., 205 S.W.2d 291, 297.
In Taylor v. Farmers Bank of Chariton County, Mo.App., 135 S.W.2d 1108, 1111, we approved the following definition of estoppel:
" `To constitute * * * an estoppel, the following elements are essential: "(1) There must be conduct, acts, language, or silence amounting to a representation or a concealment of material facts. (2) These facts must be known to the party estopped at the time of his said conduct, or, at least, the circumstances must be such that knowledge of them is necessarily imputed to him. (3) The truth concerning these facts must be unknown to the *185 other party claiming the benefit of the estoppel at the time when such conduct was done, and at the time when it was acted upon by him. (4) The conduct must be done with the intention, or, at least, with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. (5) The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. (6) He must in fact act upon it in such a manner as to change his position for the worse."'"
We will dispose of United's plea of estoppel as the same relates to invoices purchased by it prior to February 17, 1949, upon which date Parkview received a letter notifying it that United would, in future, buy all of Continental's invoices.
United points out that its president introduced Koviss to Parkview's president and told him that United had been buying some of Continental's accounts receivable. It is urged that such information, so conveyed to Parkview, created a duty on the part of Parkview, requiring that it inform United of the terms of the contract between Parkview and Continental, and of Parkview's right to set off. Such information was not sufficient to inform Parkview, or to put it on notice, that United would ever buy any of the former's accounts from Continental. Parkview's president could have regarded the statement by Hipsh merely as an indication of Hipsh's regard for Koviss, or as a recommendation of Koviss' business integrity.
It is claimed that the information stamped on each of the invoices purchased by United, and thereafter mailed to Parkview, constituted notice to the latter of its interest in such accounts. The most that can be said regarding such stamped information is that it notified Parkview that United had purchased the invoices upon which the stamp appeared; but it was not sufficient to put Parkview on notice that United would, in future, purchase all, or any, of such invoices. Furthermore, Parkview's right to set off, including its rights regarding `on hand' merchandise, had already attached. The facts upon which the claimed set-off rests had existed from the date of the execution of the contract between Parkview and Continental.
The fact that Mr. Poisner, Parkview's agent knew, after purchase, that United had purchased an invoice, or invoices, is not important because, as said before, Parkview's right to set-off existed as to each invoice representing merchandise sold to Parkview, before its purchase by United. Therefore, United acquired no greater rights, as to each of such invoices, than Continental had. Restatement of the Law of Contracts, supra. When United purchased the invoices, and each of them, they were, at that time, subject to Parkview's right to set off. Such right inhered in the very contract, between Parkview and Continental, under which Parkview bought the merchandise which was the subject of the invoices.
United seeks to invoke estoppel based on Parkview's having issued and delivered its checks to United in full settlement of all invoices, to and including February 4, 1949, without deducting therefrom its set-off, or without mentioning its right to assert same. Parkview had the right to assert its set-off at that time; but it was not bound to do so. It had a contract with Continental which, at that time, had run but a few weeks and, it is reasonable to assume that Parkview considered that there was ample time, in future, to deduct its set-off. Nothing appears in the record that would have indicated anything to Parkview but that a profitable business arrangement had been entered into between it and Continental, and that such arrangement would continue for weeks, or months, thereafter. Consequently it is not at all significant that it did not deduct its set-off from its first remittance on the account.
Mr. Hipsh had known Koviss previous to introducing him to the president of Parkview. He had bought accounts receivable from him. It would not be unusual if Parkview assumed that Koviss had informed United of the terms of his contract with Parkview, prior to selling it any accounts growing out of said contract. At any rate, nothing appears that could have caused *186 Parkview to suspect or assume the contrary. We could not say that Parkview was "culpably" negligent in failing to inform United of the terms of Parkview's contract with Continental.
Parkview never gave United any false information, nor was it guilty of any positive conduct or act which caused United to buy accounts receivable from Continental, resulting in loss to it. In this respect this case differs from that of Universal Credit Company v. Enyart, 231 Mo.App. 299, 98 S.W.2d 120, cited by United. However, mere silence may, under certain conditions, mislead another to his detriment, thereby furnishing grounds for application of the law of estoppel. Taylor v. Farmer's Bank of Chariton County, supra; Prouse v. Schmidt, Mo., 156 S.W.2d 919, 921; 19 Am.Juris. Estoppel, Sec. 55.
United contends that such a situation is here presented. It cites, among others, the above-mentioned decisions. It concedes, however, that there must be a duty to speak before one can be bound by the law of estoppel; and so the decisions say. Brown v. Brown, 347 Mo. 45, 146 S.W.2d 553, 555.
We cannot say that the evidence here presents a situation where Parkview was under a duty to speak and to inform United of the terms of its contract with Continental. No doubt United could have secured full information regarding the contract, upon inquiry made to Parkview. In the case of Securities Inv. Co. v. International Shoe Company, Mo.App., 5 S.W.2d 682, 684, cited by United, it was held to be a question of fact as to whether or not a signed statement rendered to Securities was false or misleading, resulting in loss to the assignee. That case is not in point here.
Parkview's failure to inform United of the terms of its contract, and its right to set-offs thereunder, is the sole ground upon which estoppel could rest. We hold that, under the evidence in this case, Parkview was not culpably negligent in remaining silent, because there was no duty to speak prior to being informed that United would, in future, purchase all of Parkview's accounts from Continental.
Such information was received by Parkview on February 17th. Parkview failed to inform United of its right of set-off, as against Continental, until March 4th. In the meantime, United purchased accounts dated February 23 and February 24, totaling $194.85.
It may reasonably be assumed that it would not have purchased said accounts had it known that they were subject to set-offs totaling some $975. The question presented is: Did receipt by Parkview of the letter above-mentioned create an obligation, or duty, on the part of Parkview to speak, to inform United of its claimed rights? If so, it should be estopped to claim its set-off, as against these last-mentioned accounts. Eveloff v. Cram, 236 Mo.App. 1013, 161 S.W.2d 36; State ex Inf. McKittrick, ex rel. City of California v. Missouri Utilities Company, 339 Mo. 385, 402, 96 S.W.2d 607, 106 A.L.R. 1169; Kirk v. Hamilton, 102 U.S. 68, 78, 79, 26 L.Ed. 79.
In State ex Inf. McKittrick, ex rel. City of California v. Missouri Utilities Co., supra, 339 Mo. at page 402, 96 S.W.2d 607, 106 A.L.R. 1169, it is said that decided cases are often of little value in determining whether estoppel should be applied in a given case, because application of the rule depends upon the identical state of facts presented. Estoppel by silence is sometimes referred to as estoppel by "standing by"; but actual presence or participation in the transaction is not necessary for application of the principle. It applies in some situations where a party, having knowledge that another is about to act to his detriment and who owes a duty to warn, remains silent. See Am.Jr. Estoppel, Sec. 55.
Parkview had full knowledge of its right and of its intention to assert a set-off against its purchase of merchandise from Continental. When it received the letter, above referred to, it then knew that United probably had no such information; and it also knew that United was about to (and did thereafter) change its position financially by purchasing all of Parkview's accounts payable to Continental. Parkview had ample time in which to advise United of the true facts, prior to the latter's purchase *187 of accounts based on invoices dated February 23 and 24, in the amount of $194.85.
Thus, Parkview had knowledge and opportunity, under all of the facts shown in evidence, to speak. We think it was under a duty to exert active diligence to protect United from injury. Silence, under the circumstances here shown, indicates a willingness on the part of Parkview that United be deceived, because it had paid United a substantial amount for invoices purchased prior to receipt of the letter and had, thereby, established a course of dealing which might reasonably deceive United. Failure to inform United of its claim, after receipt of the letter of February 17, amounted to concealment. 19 Am.Jur. supra.
The judgment should be reversed and the cause remanded with directions to enter judgment in favor of United in the amount of $194.85.
BOUR, C., concurs
PER CURIAM.
The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded with directions to enter judgment in favor of United in the amount of $194.85.
All concur.