[No. 34837. Department Two. April 30, 1959.]

JACK N. NELSON, *Appellant*, v. RICHARD E. BAILEY *et al.*, *Defendants*, R. E. SHAW, *Respondent and Cross-appellant.*

JACK N. NELSON, *Appellant*, v. RICHARD E. BAILEY *et al.*, *Defendants*, R. E. SHAW, *Respondent and Cross-appellant.*

R. E. SHAW, *Respondent*, v. R. E. BAILEY *et al.*, *Defendants*, JACK N. NELSON, *Appellant.*

ERNEST JONSON, *Appellant*, v. RICHARD E. BAILEY *et al.*, *Defendants*, GEORGE T. MOOD *et al.*, *Respondents.*[1]

[1]Reported in 338 P. (2d) 757.

*Skeel, McKelvy, Henke, Evenson & Uhlmann, Miracle, Treadwell & Pruzan,* and *Jerome Shulkin,* for appellants.

*Donald K. Fleck,* for respondent Shaw.

*Gould & Ackley,* for respondents Mood *et al.*

ROSELLINI, J.—Questions of law only are presented on this appeal; the facts are not in dispute. The actions, consolidated for trial, were brought to foreclose mortgages and other liens against two dwelling-house properties situated in King county. The appellants are Jack N. Nelson, the assignee of one of the mortgages, and Ernest Jonson, the receiver for the mortgage company holding the other. The liens of the respondent R. E. Shaw, doing business as Seahurst Lumber Company, were given priority over the mortgages, which were executed and recorded prior to the date on which the first materials were delivered and also prior to the date on which the mortgagor, R. E. Bailey, acquired title to the property. Error is assigned to the conclusion of law on the basis of which this priority was awarded, and to

the conclusion of the trial court that George T. Mood and Ruth J. Mood, his wife, the sellers, were entitled to an equitable lien in the amount of the unpaid balance of the purchase price on any proceeds of the foreclosure sale which Jonson might recover.

In regard to the first assignment of error, the appellants urge that their mortgages are entitled to priority over the materialmen's liens of Shaw because, although the mortgages had not attached to the fee on the date of the first delivery of materials, they had attached to whatever interest Bailey had on that date, and the recording was sufficient to give Shaw constructive notice of their existence.

We agree with this contention. RCW 60.04.020 gives a lien to any person, firm or corporation furnishing materials to be used in the construction of a building, provided notice of the intention to claim a lien is given to the owner or reputed owner within five days after the first delivery. RCW 60.04.030 provides that the property will be subject to the lien to the extent of the interest of the person who, in his own behalf or through his statutory agent, caused the work to be done.

Laws of 1893, chapter 24, § 4, p. 33 [cf. RCW 60.04.050] provides:

"The liens created by this act are preferred to any lien, mortgage or other incumbrance which may attach subsequently to the time of the commencement of the performance of the labor, or the furnishing of the materials for which the right of lien is given by this act, and are also preferred to any lien, mortgage or other incumbrance which may have attached previously to that time, and which was not filed or recorded so as to create constructive notice of the same prior to that time, and of which the lien claimant had no notice."

The findings reveal that on August 15, 1956, pursuant to an agreement between the Moods and Bailey, two deeds were acknowledged and placed in escrow, with instructions to the agent to deliver the deeds upon receipt of a portion of the purchase price and security for the balance, including an assignment of a portion of the proceeds of an antici-

pated mortgage to the Western Mortgage Company, said assignment to bear the acceptance of the mortgagee. A mortgage on one of these parcels had been executed and delivered to the Western Mortgage Company on July 30, 1956, and recorded on August 2nd; and a mortgage covering the other was executed and delivered on August 21st, and recorded on August 24th.

Payment for the first parcel was received and the deed was released to Western Mortgage Company on September 12, 1956. Part payment of the purchase price of the second parcel was made and the security for the balance, including an assignment of mortgage funds accepted by the mortgagee, was received by the escrow agent on September 18, 1956, when the deed to this parcel was released to the mortgagee. These deeds were recorded on September 18th and 21st, respectively.

In the meantime, on September 11, 1956, Shaw commenced to deliver materials to the first parcel at Bailey's order. Deliveries to the second parcel were commenced on September 4th.

It is conceded that the interest of the Moods in this property was not subject to the mortgages or to the liens for materials. Generally speaking, work done, upon order of the vendee under a contract of purchase, will not support a lien on the property as against the interest of the vendor. *Newell v. Vervaeke,* 189 Wash. 144, 63 P. (2d) 488. An exception to the rule exists where the contract of sale requires the vendee to improve the property. *Newell v. Vervaeke, supra,* and cited cases. According to the findings, no such requirement was made in this case.

Bailey's interest at the time these encumbrances attached was, at the most, the equitable interest of a contract vendee, that is, the right to acquire the property on payment of the purchase price. This was the interest to which the mortgages had attached. The applicable rule, approved in *Young v. Clay,* 139 Ore. 427, 10 P. (2d) 602, is stated in 59 C. J. S. 237, § 184, as follows:

"A mortgage given by one holding land under an executory contract for its purchase covers his interest, whatever

it may be, at the date of the mortgage, giving the mortgagee the right to complete the purchase if his mortgagor refuses to do so; and the mortgagee cannot be ousted of his rights by a rescission of the contract of sale by the original parties to it. However, the mortgagee will take no other or greater rights than the vendee had, that is, he will acquire simply a right to purchase the property for the consideration stipulated in the contract of purchase, or to require a conveyance of the estate from the vendor according to the terms of the agreement, on completing the payment of the purchase price; and the enforceability of the mortgage depends on the condition that the contract be kept in force by the subsequent performance of its terms. When a conveyance is made to the mortgagor pursuant to the contract, the mortgage then attaches on the legal title thus vested in him."

By statute in this state, the after-acquired title is made to vest in the mortgagee. RCW 64.04.060; *Everly v. Wold,* 125 Wash. 467, 217 Pac. 7.

RCW 60.04.030 provides a lien for material which extends only to the interest of the person causing the work to be done. The trial court seems to have concluded that the liens of Shaw somehow attached to the land when the materials were delivered, even though the only interest which Bailey had was the right to acquire the land by paying the purchase price and the owners, the Moods, had no part in causing the materials to be ordered. The interest of Bailey was already encumbered with the mortgages, which had been duly recorded. While the mortgages were not given by the record owner, they were given by the person with whom Shaw dealt as the owner, and a search of the record would have revealed that his interest, if any, was subject to the mortgages.

In other jurisdictions, it is generally held that a mechanics' lien is inferior to a purchase-money mortgage and a mortgage such as those involved in this action, the proceeds of which are to be used partly to pay the purchase price of the land and partly to pay for construction, even though the mortgage was not given until after the mechanics' lien would normally have attached. *Macintosh v. Thur-*

*ston,* 25 N. J. Eq. 242; *Gibbs v. Grant,* 29 N. J. Eq. 419; *Ettridge v. Bassett,* 136 Mass. 314; *Wilson v. Lubke,* 176 Mo. 210, 75 S. W. 602; *Joplin Cement Co. v. Greene County Building & Loan Ass'n,* 224 Mo. App. 1064, 34 S. W. (2d) 529. See 72 A. L. R. 1516, 1530. Many of the courts reach this conclusion through application of the doctrine of instantaneous seisin, under which the title becomes encumbered with the mortgage the moment it passes from the seller to the purchaser and before the mechanics' lien can attach.

In this jurisdiction, the court has refused to apply the doctrine in cases where its application would defeat the claim of a mechanic who has undertaken to perform work and deliver materials before title has been acquired by the person ordering the same, where the mortgagee knew that work was in progress at the time the mortgage was taken. *Mutual Sav. & Loan Ass'n v. Johnson,* 153 Wash. 41, 279 Pac. 108; *Stoneway Lbr. Co. v. Lovenberg,* 156 Wash. 146, 286 Pac. 105; *Capital Sav. & Loan Ass'n v. Vaughn Hardware Co.,* 163 Wash. 396, 1 P. (2d) 310.

The respondent Shaw insists that these decisions support the judgment of the trial court in this action. These cases are distinguished on the facts, however. In none of them was the mortgage recorded until after the work had commenced. Here, both mortgages were recorded prior to the first delivery. The cited cases correctly give effect to our mechanics' lien statute, which makes notice or lack of notice (actual or constructive), not title or lack of title, the significant factor in determining priorities. In this case, since the materialman rather than the mortgagee had notice of prior claims at the time his liens attached, the statute places his liens below those of the mortgagee.

The appellant Jonson assigns error to the conclusion that the mortgage held by Western Mortgage Company, for which he is receiver, is subject to an equitable lien in favor of the sellers, by virtue of the fact that the assignment of the proceeds executed by Bailey was accepted by the mortgage company at a time when there were not sufficient

funds remaining in the mortgage account to cover the amount due the sellers.

It is to be inferred from the findings that the officers of the Western Mortgage Company knew, or should have known, that there were insufficient funds to cover the assignment at the time they accepted it and that the deed would not be delivered until it was accepted. In reliance on the representation implied in the acceptance, that there were sufficient funds in Bailey's account to pay the balance of the purchase price, the sellers, through their agent, delivered the deed, thus divesting themselves of their property to the benefit of the mortgagee.

While it is the rule that an assignee of a nonnegotiable instrument acquires no greater right against the debtor than the assignor had against him at the time of the assignment, and that the debtor can assert against the assignee defenses which he had against the assignor, this general rule is subject to the exception that the debtor, by his representation or conduct may estop himself to assert against the assignee such defenses as would have been otherwise available to him against the assignor. *Universal Credit Co. v. Enyart*, 231 Mo. App. 299, 98 S. W. (2d) 120. See 44 A. L. R. (2d) 199.

The essential elements of an equitable estoppel as related to the party estopped are: (1) an admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act. *Moore v. Dark*, 52 Wn. (2d) 555, 327 P. (2d) 429.

The mortgagee having misled the sellers by its act in accepting the assignment, and having caused them to part with their property in reliance on the representation which was implied in that acceptance, Jonson, the receiver for the mortgagee, is estopped to deny that the sellers have a valid and unsatisfied claim upon the proceeds of the mort-

gage; and the trial court rightly impressed a lien on that mortgage for the purpose of satisfying this claim.

The respondent Shaw has cross-appealed, alleging that the court abused its discretion when it refused to allow him a reasonable attorney's fee, in addition to the amount of the liens plus interest. Apparently the court felt that the allowance of an attorney's fee of five hundred dollars, the amount which it found to be reasonable, would deplete the proceeds of the sale to the extent that Shaw would receive a greater share than was equitable since the mortgages had been denied priority. In view of the fact that the priorities between Shaw and the holders of the mortgages are being reversed, it is probable that the trial court will be inclined to allow the attorney's fee on remand, and a proper application can be made to the trial court for that purpose.

The judgment is reversed in part, affirmed in part, and the cause is remanded for further proceedings in accord with the views expressed herein.

WEAVER, C. J., MALLERY, FINLEY, and FOSTER, JJ., concur.