

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| TOMMY HEINZ, | ) | No. ED107617 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | of St. Louis County |
| vs. | ) | 18SL-CC00313 |
| | ) | |
| DRIVEN AUTO SALES, LLC, D/B/A | ) | Honorable Michael T. Jamison |
| DRIVEN AUTO SALES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| FIRST COMMUNITY CREDIT UNION, | ) | |
| | ) | |
| Respondent. | ) | Filed:  June 16, 2020 |

James M. Dowd, P.J., Gary M. Gaertner, Jr., J., and Robin Ransom, J.

Introduction

Tommy Heinz bought a 2015 Toyota Tacoma automobile from Driven Auto Sales on November 7, 2017.  Driven Auto and Heinz entered into an installment sale contract and security financing agreement for the outstanding balance of the purchase price.  On the same day, Driven Auto assigned its rights and responsibilities in those agreements to First Community Credit Union which began collecting monthly payments from Heinz.  When Driven Auto failed to provide Heinz the title to the vehicle as required by § 301.210[1], Heinz sued Driven Auto for violation of the Missouri Merchandising Practices Act (MMPA), § 407.025.  Heinz also sued

---

[1] All statutory references are to RSMo 2016 unless otherwise indicated.

First Community under the MMPA based on First Community's status as Driven Auto's assignee and holder of Heinz's sale contract and loan. After entering default judgment in Heinz's favor against Driven Auto, the trial court granted First Community's motion to dismiss wherein First Community asserted that it was immune from MMPA liability based on language found in § 407.020.2 of the MMPA, language that First Community claims exempts it from MMPA liability. Heinz now appeals that dismissal.

We reverse. We find that Heinz's petition states a cause of action against First Community because by virtue of its status as the assignee and holder of Driven Auto's sale contract and loan, First Community "stands in the shoes" of Driven Auto for all purposes including being subject to the same liability exposure in connection with those transactions and Driven Auto's liability has already been conclusively established by the default judgment entered against it. As a result, we need not reach the question regarding First Community's claimed exemption under § 407.020.2.

**Background**

Heinz brought his petition in two counts under § 407.025, the MMPA provision that allows a consumer to bring a private cause of action for violations of the MMPA, seeking actual damages and attorney's fees. Count I was against Driven Auto and alleged that by withholding the vehicle's title, Driven Auto engaged in an unlawful practice involving deception, fraud, or misrepresentation in violation of the MMPA. Heinz buttressed his allegations by asserting that Driven Auto's failure to transfer title of the vehicle violated § 301.210, which makes it illegal to sell a motor vehicle in Missouri without transferring title. He also cited 15 C.S.R. § 60-8.090(A), the state regulation promulgated by the attorney general which enumerates specific

2

practices deemed unfair under § 407.020 of the MMPA.[2] That regulation provides "[i]t is an unfair practice . . . to engage in any method, use or practice which . . . [v]iolates state or federal law."

In his second count, Heinz alleged that First Community was liable under the MMPA as Driven Auto's assignee of the contract and loan. Heinz cited a well-known federal regulation titled formally the "Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defenses," 16 C.F.R. § 433, et seq., and informally the "FTC holder rule." That rule provides, *inter alia,* that "[a]ny holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof."[3] Heinz alleged that by operation of the FTC holder rule, First Community "stands in the shoes" of Driven Auto and is subject to the same claims that Heinz had against Driven Auto including Heinz's MMPA claim based on Driven Auto's withholding of the title to the vehicle.

First Community's motion to dismiss asserted that as a credit union it is exempt from MMPA suits filed pursuant to § 407.025, the provision establishing the right of private citizens to bring claims for MMPA violations. First Community's assertion is based on the language in § 407.020.2(2) that "[n]othing contained in this section shall apply to . . . [a]ny institution, company, or entity that is subject to chartering, licensing, or regulation by . . . the director of the division of credit unions under chapter 370 . . . ." First Community asserted that as a credit union subject to chartering, licensing, or regulation by the director of the division of credit

---

[2] Pursuant to § 407.145, the legislature granted to the attorney general the authority to issue rules setting out the scope and meaning of the MMPA. *Huch v. Charter Communications, Inc.*, 290 S.W.3d 721, 724 (Mo. banc 2009).
[3] The FTC holder rule also provides that it is an unfair or deceptive act for a seller of goods to consumers to fail to include in a consumer credit contract this quoted statement. Heinz alleged the contract here bore that statement which First Community has not disputed.

unions, it is exempt from any MMPA liability resulting from the conduct of its assignor Driven Auto. After the motion to dismiss was granted, Heinz filed this appeal.

**Standard of Review**

We review *de novo* the grant of a motion to dismiss a petition for failure to state a claim. *Lang v. Goldsworthy*, 470 S.W.3d 748, 750 (Mo. banc 2015). The facts contained in the petition are treated as true and they are construed liberally in favor of the plaintiff. *Ste. Genevieve Sch. Dist. R–II, et al. v. Bd. of Aldermen of Ste. Genevieve, et al.,* 66 S.W.3d 6, 11 (Mo. banc 2002). If the petition sets forth any set of facts that, if proven, would entitle the plaintiff to relief, then the petition states a claim. *Id.* Plaintiff's petition states a cause of action if "its averments invoke principles of substantive law [that] may entitle the plaintiff to relief." *Asaro v. Cardinal Glennon Mem'l Hosp.,* 799 S.W.2d 595, 597 (Mo. banc 1990).

In determining the appropriateness of the trial court's dismissal of a petition, an appellate court reviews the grounds raised in the defendant's motion to dismiss. *Lang*, 470 S.W.3d at 750. If the motion to dismiss cannot be sustained on any ground alleged in the motion, the trial court's ruling will be reversed. *Id.* Moreover, where, as here, "the trial court does not state a basis for its dismissal, we presume that dismissal was based on the grounds stated in the motion to dismiss . . . ." *State Dep't of Soc. Services., Div. of Aging v. Carroll Care Centers, Inc.*, 11 S.W.3d 844, 849 (Mo. App. W.D. 2000).

**Discussion**

*1. Heinz's MMPA claims.*

The fundamental purpose of the MMPA is to protect customers and consumers. *Arcese v. Daniel Schmitt & Co.*, 504 S.W.3d 772, 789 (Mo. App. E.D. 2016) (citing *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 433 (Mo. banc 2013)). "The MMPA is paternalistic

4

legislation designed to protect those that could not otherwise protect themselves." *Berry*, 397 S.W.3d at 433 (citations omitted). To promote this laudable purpose, the MMPA broadly prohibits false, fraudulent, or deceptive merchandising practices and affords our trial courts remedial measures (*i.e.*, damages, injunctions, equitable relief, and attorney's fees), "designed not only to remedy violations of the MMPA, but also prospectively to deter prohibited conduct and protect Missouri citizens." *Id.* In conjunction therewith, effectuating this legislative purpose is not confined to the office of the attorney general, but private citizens injured by MMPA violations "have a right to act as 'private attorneys general' for purposes of enforcing it." *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 769 (Mo. banc 2007); § 407.025.1.

In addition to civil liability, persons who violate the MMPA may be subject to criminal prosecution. *Huch*, 290 S.W.3d at 725. A person who willfully and knowingly engages in an act declared unlawful by § 407.020 is guilty of a class E felony. *Id.;* § 407.020.3.

Section 407.025, the statute that created the private right of action, provides as follows:

1. Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

Section 407.020 declares which methods, acts, or practices are unlawful:

1. The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice . . . .

5

Because Heinz's MMPA claim against First Community is derivative of his claim against Driven Auto, we briefly address that claim. Heinz alleged that Driven Auto's failure to transfer to him the vehicle's title violated § 301.210, which makes it unlawful and fraudulent to sell a motor vehicle in Missouri without transferring title. He also cited 15 C.S.R. § 60-8.090(A), the state regulation promulgated by the Missouri Attorney General to enumerate specific practices deemed unfair under § 407.020. That regulation provides "[i]t is an unfair practice . . . to engage in any method, use or practice which . . . [v]iolates state or federal law."

We find that Heinz's petition stated a cause of action against Driven Auto under § 407.025 for its conduct defined as unlawful by § 407.020 and § 301.210. In addition, the default judgment against Driven Auto established conclusively that Heinz stated a cause of action because a default admits the petition's traversable allegations "constituting the plaintiffs' cause of action and the defendant's liability thereunder." *Coleman v. Meritt*, 292 S.W.3d 339, 343 (Mo. App. S.D. 2009) (quoting *Sumpter v. J.E. Sieben Constr. Co.*, 492 S.W.2d 150, 153 (Mo. App. 1973)).

> *2. Heinz's petition states a cause of action against First Community under Missouri law based on First Community's status as Driven Auto's assignee.*

Although Heinz's petition emphasized the federal law basis of the claim against First Community, specifically the FTC holder rule, we find that Heinz's allegations are sufficient under our standard of review to invoke principles of *Missouri* law that may entitle plaintiff to relief against First Community as Driven Auto's assignee of the sale contract and loan agreement. We specifically look to the Uniform Commercial Code–Sales, § 400.2-101 et seq., and related Missouri case authorities, to determine the question before us.

6

The UCC applies to the assignment of sales agreements that occur in Missouri like the one here. Section 400.2-210(5) provides that "[a]n assignment . . . is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise by him to perform those duties. This promise is enforceable by either the assignor or the other party to the original contract." § 400.2-210(5). Moreover, the UCC favors the free assignability and delegation of rights and duties in sales agreements except where the rights and duties of the contracting parties are significantly altered or their "chance of obtaining return performance" materially diminished. § 400.2-210(2); *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 124 n.14 (Mo. banc 2010) (citing J. White and R. Summers, Uniform Commercial Code 278 (5th ed. 2002)).

So, under the foregoing UCC principles, the assignment here did two things. First, it gave First Community the same rights Driven Auto had under the sale contract and loan agreement including the right to collect the loan payments from Heinz which First Community proceeded to do. But the assignment also meant that First Community became obligated to perform all of Driven Auto's duties created by the sales contract and security agreement including the statutory duty under § 301.210 to transfer title to Heinz upon delivery of the vehicle. To hold otherwise would run contrary to § 400.2-210(2)'s mandate that the assignment must not materially diminish Heinz's "chance of obtaining return performance."

Moreover, by operation of § 400.2-210(5), First Community's acceptance of the assignment, which is undisputed here, constituted an affirmative promise by First Community to perform Driven Auto's duties under the contract which included, according to the allegations in Heinz's petition, to provide Heinz with the title to the vehicle. We observe that by using the term "promise" in this context, the legislature has unequivocally communicated that the assignee

7

is not only accepting the rights and responsibilities of the assignor, but is affirmatively promising to abide by such.

The general rule is that the assignee of a non-negotiable obligation occupies exactly the same position the assignor occupied. *Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191, 206 (Mo. App. W.D. 2013) (citing *United Fin. Plan, Inc. v. Parkview Drugs, Inc.*, 250 S.W.2d 181, 184 (Mo. App. 1952)). And just as the assignee accepts performance of all of the assignor's duties under the contract, the assignee also takes subject to all defenses that might have been made against it while in the hands of the assignor at the time of assignment. *Id.*

Thus, guided by Missouri Supreme Court Rule 55.05's liberal pleading policy and our standard of review which prohibits dismissal if the petition sets forth any set of facts entitling the plaintiff to relief, we find that Heinz's petition states an MMPA claim against First Community, as Driven Auto's assignee, for the fraudulent and illegal failure to provide Heinz with title to the vehicle.

> 3. *Heinz's petition also states a cause of action against First Community by operation of the FTC holder rule.*

In many respects, the FTC holder rule mirrors the foregoing principles of Missouri law regarding assignee liability. The FTC holder rule provides that "any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained . . . ." 16 C.F.R. § 433.2. And like the MMPA, the FTC holder rule "exists to preserve consumer rights against holders[.]" *Boulds v. Chase Auto Fin. Corp.*, 266 S.W.3d 847, 852 (Mo. App. E.D. 2008).

From our analysis below, we reach the critical conclusion that the "subject to all claims" language from the FTC holder rule is broad and encompasses the MMPA claim at issue here. In

8

*Boulds*, we found that "the liability of the holder is as broad as that of the seller under the FTC holder rule[.]" 266 S.W.3d at 852. And Missouri courts have consistently held that an assignee-holder, "by virtue of being an assignee," may be liable on an MMPA claim regardless of whether the *assignee* committed fraudulent or unlawful conduct. *Peel*, 408 S.W.3d at 205-06 (holding that the assignee-holder of a retail installment contract from the purchase of a vehicle was liable, "by virtue of being an assignee," for a consumer's MMPA claim filed against the holder even if based solely on the seller's failure to deliver title upon delivery of the vehicle); *Boulds*, 266 S.W.3d at 851-52 (holding, conversely, that where a consumer's MMPA claim brought against the seller was subject to a binding arbitration agreement, the assignee-holder of the contract containing that agreement was likewise shielded from the civil suit under the MMPA).

The language of our cases cannot be more explicit. "[T]his provision [the FTC holder rule] in a Retail Installment Contract puts the holder in the shoes of the seller[,]" *Peel*, 408 S.W.3d at 205; "the assignment of [a] sales contract [containing such language] . . . carries with it the responsibility of owning that contract[,]" *id.*; and "[t]he general rule is that the assignee of a non[-]negotiable obligation occupies exactly the same position with respect thereto that his assignor occupied." *Id.* at 206 (citing *Parkview Drugs*, 250 S.W.2d at 184).

While we acknowledge the line of cases relied on by First Community that have sought to restrict the types of claims and defenses to which a holder becomes subject by operation of the FTC holder rule, *see, e.g., Comer v. Person Auto Sales, Inc.*, 368 F.Supp.2d 478, 490 (M.D.N.C. 2005) (finding that the FTC holder rule could not be used affirmatively against assignee for dealer's fraudulent conduct where buyer failed to show that dealer's conduct had rendered the vehicle practically worthless to him, or that contract rescission was appropriate), our cases have followed a broader interpretation of the rule. *Boulds,* 266 S.W.3d at 850.

"[T]he FTC Holder Rule is unambiguous and, on its face, places no limitation on the types of claims or defenses that a debtor may assert against a creditor-assignee." *Beemus v. Interstate Nat'l Dealer Services*, 823 A.2d 979, 984 (Pa. Super. 2003). The court in *Beemus* adopted this rule in accordance with the staff opinion letter issued by the FTC on September 25, 1999, which stated: "If the Commission had meant to limit recovery to claims subject to 'rescission' or similar remedy, it would have said so in the text of the Rule and drafted the contractual provision accordingly." (reaffirmed by the most recently-adopted version of the FTC holder rule, 84 Fed. Reg. 18711, 18712 (May 2, 2019)).

And in *Boulds,* we found the scope of the "claims" to which the holder is subject under the FTC holder rule to be broad and not limited to situations where the buyer could establish grounds for rescission and restitution. In *Boulds*, we rejected the argument that pursuant to the following language from § 408.405, an automobile purchaser could raise fraud as a defense or as a setoff but could not bring an affirmative fraud claim against the holder: "The rights of a holder or assignee of an instrument, account, contract, . . . are subject to all defenses and setoffs of the debtor arising from or out of such sale . . . as a matter of defense to or setoff against a claim by the holder or assignee, . . . ." 266 S.W.3d at 850. We explained that the phrase "only . . . as a matter of defense or setoff against a claim by the holder or assignee" in § 408.050 does "not modify the consumer's assertion of his or her rights, rather they modify the 'defenses and setoffs' to which a holder's rights are subject." *Id.* We cautioned that respondent's interpretation of § 408.405 was "troubling . . . because it betrays the wording and purpose of the statute, and because the result leaves the buyer with no recourse beyond waiting to be sued." *Id.*

Moreover, "[t]o limit consumer claims to only those situations where rescission of the contract is appropriate would, in many instances, confound the FTC's goal of shifting liability for

seller misconduct from the consumer to the seller or its assignee." *Beemus*, 823 A.2d at 985 (citing to 40 Fed. Reg. 53506, 53523 (November 18, 1975), which discusses at length the rationale behind the FTC holder rule and the FTC's expressed desire to "reallocat[e] the costs of seller misconduct in the consumer market," by "compel[ling] creditors to either absorb seller misconduct costs or return them to sellers.").

So here, where Heinz pleaded that the agreement at issue contained the language required by the FTC holder rule that any assignee-holder is subject to "all claims that the consumer could assert against the seller of the vehicle," First Community was placed in the shoes of Driven Auto and therefore is subject to the same claims that Heinz had against Driven Auto.

4. *The foregoing renders inapplicable and inoperative the language of § 407.020.2 which First Community asserts exempts it from MMPA liability in this case.*

Our holding in this regard is simple. To exempt First Community from liability in this case would be antithetical to the fundamental and well-established principles outlined above that First Community "stands in the shoes" of Driven Auto. It would fly in the face of the mandates from the UCC that (1) by accepting the assignment, First Community "promised" to perform Driven Auto's duties, § 400.2-210(5), and (2) that an assignment must not significantly alter the rights and duties of the contracting parties or materially diminish their "chance of obtaining return performance." § 400.2-210(2). These principles would be gutted if First Community was allowed to enjoy the benefits of the assignment by collecting on the loan while escaping the responsibilities and duties to which it promised to adhere.

Similarly, First Community's claimed exemption would also gut the fundamental principle of the FTC holder rule that the liability of the holder is as broad as that of the seller. We need not look any further than our decision in *Boulds* to illustrate this point. There, we

11

enforced an arbitration agreement in favor of the holder even though the holder only became a party to the agreement after the seller assigned all of its interest under the agreement. "Just as liability of the holder is as broad as that of the seller under the FTC holder rule, the liability of the holder should be subject to the same limitations as that of the seller." *Boulds*, 266 S.W.3d at 852.

While we are dubious that § 407.020.2 created a vast immunity for credit unions from all MMPA liability, in light of our holdings above, we need not reach that issue.

### Conclusion

Accordingly, we reverse and remand.

_____
James M. Dowd, Presiding Judge

Gary M. Gaertner, Jr., and
Robin Ransom, J., concur.