A. J. LEWIS v. LUTHER GRAY, Appellant, W. F. BELL and METROPOLITAN LIFE INSURANCE COMPANY, a Corporation, Respondents.—No. 39991.—201 S. W. (2d) 148.

Division Two, April 21, 1947.

*Frank C. Douglas* for appellant.

*C. A. Powell* for respondent Bell.

*R. E. Bailey* of *Bailey & Bailey* and *W. Leon Smith* for respondent Lewis.

118

BOHLING, C.—A. J. Lewis instituted this action November 15, 1944, against W. F. Bell, Luther Gray, and the Metropolitan Life Insurance Company, a corporation, hereinafter designated "Metropolitan," to enjoin the execution of a deed by the Metropolitan to defendant Gray, to determine the interest of the parties in 547 acres of land in Stoddard county, Missouri, known as the Buck farm, and to foreclose a deed of trust against the interest of Bell in said real estate. A sketch of the facts here may afford a readier grasp of the case. Metropolitan held the fee title to the land. Bell held a contract to purchase it from Metropolitan. Thereafter, Bell executed a deed of trust against whatever interest he had to secure an indebtedness to Lewis. Later Bell assigned his contract to purchase to Gray; Gray discharged the obligations thereunder to Metropolitan, received a deed from Metropolitan and executed a purchase money

note and deed of trust to Metropolitan to secure the payment of the balance due.

Lewis' suit was too late to stop the deed from the Metropolitan to Gray and that feature dropped out of the case. The right of the Metropolitan to the payment of the purchase money balance due was not questioned and it remained in the case as a nominal party only.

The case presents two controversies: One, between Lewis and Gray, as indicated above. The other, between Bell and Gray, originating in the complaint in Bell's answer against Gray wherein Bell asked the cancellation of his assignment to Gray and the deed from Metropolitan to Gray on the ground Gray had misrepresented certain facts; the equitable adjustment of the transaction and subsequent incidental transactions between Gray and Bell and, broadly, that title be determined accordingly and possession restored to him. Bell's answer admitted all the allegations in Lewis' petition.

Gray's separate answers sought the dismissal of Lewis' petition; denied the charges in Bell's complaint, and set up his willingness to perform his contract with Bell, charged Bell with failure to perform, including a failure to remove the cloud of the deed of trust held by Lewis, asked that the same be decreed "no lien" and for general relief.

The decree vested title in "W. F. Bell or the purchaser at the foreclosure sale" therein ordered upon the execution of a new note and deed of trust to Metropolitan, Gray's note and deed of trust thereupon to be cancelled. The decree ordered the foreclosure of Lewis' deed of trust, the same to be subject to the unpaid balance due Metropolitan, which was decreed a first lien, and also subject to $2,521, and interest, representing Gray's payments to Metropolitan, which was decreed a lien subject to the lien of Metropolitan. The decree cancelled the contracts between Bell and Gray connected with the transaction, gave Gray judgment against Bell for $110.62, decreeing the same a lien (subject to the three liens mentioned above) against Bell's interest in the land, and decreed a lien against the land in favor of Bell's attorney for one-half of Bell's equity in the land, subject to the liens hereinabove mentioned, and assessed the costs against Bell.

Gray prosecutes the appeal. He makes several attacks on the decree in favor of Lewis, some of which overlap. He contends, in substance, that error was committed in holding Bell's interest under the executory contract to purchase could be sold or mortgaged by Bell, in holding Bell's deed of trust to Lewis, when recorded, was notice to the world of Lewis' interest in the land and that Gray took subject thereto, and in decreeing the foreclosure of said deed of trust. If Gray took subject to Bell's deed of trust to Lewis, the above contentions of Gray fall.

On May 14, 1941, the Metropolitan contracted to sell the 547 acres of land to W. F. Bell and Elna Bell, his wife, for $18,700, and in-

terest, payable in installments as therein specified, the down payment being $1,740. The contract provided for title remaining in the vendor, and the vendee agreed not to attempt to encumber or permit liens to attach in such manner as to affect the vendor's title. Mention is made of this provision in Gray's brief but it is plain that the restriction is against acts tending to affect the vendor's title and not the interest of the vendee. The right of either party under the contract was to pass to the successor or assign of said party. Bell took possession May 15, 1941. Upon performance and surrender of his copy of the contract by the vendee, the vendor agreed to convey by warranty deed; subject, however, among other things, to any liens created by the vendee; and also agreed, as modified later, upon the reduction of the principal amount due under the contract to $13,000, to execute the warranty deed aforesaid and accept a $13,000 purchase money note secured by a purchase money mortgage or deed of trust on the land. The contract expressly provided that such vendor's deed would be subject to the title of anyone claiming under the vendee. This real estate sale contract was not acknowledged by the vendor and was never recorded. W. F. Bell and Elna Bell were divorced and Elna Bell deeded any interest she might have under the contract to W. F. Bell.

Bell contracted on August 1, 1942, to sell the land to G. C. Wadley for $34,145, Wadley depositing $3,000 in escrow. Thereafter Wadley instituted suit in Arkansas to recover the $3,000. Bell filed answer and cross-complaint, seeking specific performance. A demurrer was sustained to the cross-complaint but upon appeal this judgment was reversed and the cause remanded for trial. See Bell v. Wadley (Ark.), 177 S. W. 2d 403, for greater detail of fact. We understand this controversy was finally settled by Wadley paying the costs and $650 attorney fees. Fletcher Fisher, a realtor, brought about the transaction between Bell and Wadley. He accepted Bell's $800 note and the exclusive listing of the real estate for the commission due him in the transaction.

W. F. Bell and A. J. Lewis had a number of business transactions. They need not be detailed here as the preponderance of the evidence sustains the court's finding establishing Bell's indebtedness to Lewis. At the time of the Bell-Wadley settlement, Bell and Lewis determined to have an accounting and evidence all of Bell's indebtedness to Lewis in one note. This resulted on May 22, 1944, in W. F. Bell and Audrey Bell, his then wife, executing and delivering to Lewis their 8% note for $12,763.19, payable November 1, 1944, and a deed of trust against their interest in and to the real estate in question to secure the same (expressed in said deed of trust as set out in the margin[1]). This deed

[1]"The same being an equitable title and a right to purchase under the provisions of a written real estate contract executed by Metropolitan Life Insurance Company on the 14th day of May, 1941, wherein said Company

of trust was duly recorded in Stoddard county, Missouri, on May 23, 1944, and Lewis seeks its foreclosure.

An agreement of Septemper 29, 1944, was to the effect that Bell had an option to purchase a certain 80 acres owned by Gray for $6,000, it being understood that it was necessary for Bell to sell his interest in the 547 acres to purchase the 80, Gray undertaking to sell said 547 acres and giving Bell the privilege of living on the 80 acres until January 1, 1945, et cetera. Bell was needing money. He importuned Fisher to sell the 547 acres. Fisher, on October 9, 1944, suggested that Gray make arrangements to purchase the land. Gray telephoned the Metropolitan at Memphis to ascertain what would be required to take up Bell's rights. Gray got in touch with Bell. They agreed to an exchange of farms—Gray's 80 acres and $1,000 cash for Bell's interest in the 547 acres.

There is some testimony of record that Gray, in connection with this transaction, misrepresented to Bell that Lewis was coming over the following day, October 10th, to start foreclosure proceedings under Bell's deed of trust. Gray denied this, as well as any knowledge of the deed of trust; and the court, in its findings, did not find Gray guilty of misrepresentations in connection with the transaction. Gray made inquiry concerning the records in Stoddard county. He ascertained that Metropolitan held title to the 547 acres. He did not find Bell's contract to purchase or deed of trust to Lewis of record. There was testimony that the deed of trust was not inquired about. Gray, Bell, and Bell's wife, together with realtor Fisher, went to the office of the Metropolitan in Memphis on October 10, 1944. Bell claimed he had lost his copy of the contract to purchase. The Memphis manager of Metropolitan had no objection to Gray purchasing the land. Bell and his wife, on a form furnished by Metropolitan, assigned their interest in the real estate purchase contract to Gray. Gray paid Metropolitan $1,668.50 due under Bell's contract, and made application for a deed and, in connection therewith, secured the $13,000 unpaid balance with a deed of trust on the land. Bell and Gray put their agreement of October 9th into writing on October 11, 1944. Gray's performance was expressly conditioned therein upon his receiving a fee simple title "free and clear of all encumbrances except the deed of trust" to Metropolitan to secure the purchase price balance due; otherwise said contract was to be "null and void." There were other details connected with the transactions. Bell transferred the balance due him for rents on the 547 acres to Gray to pay Fisher's $800 note and $300 rent due Gray. Gray advanced Bell a total of $1,655 prior to

agreed to sell to W. F. Bell the lands described herein"; and also: "For the same consideration, we set over, transfer and assign unto the trustee for the benefit of the beneficiary to be named herein all our rights under the written contract above referred to, subject to the conditions hereinafter set forth in this instrument."

October 21, 1944, when he received a letter from the Metropolitan advising that the abstract showed the deed of trust from Bell to Lewis. Gray ceased performance on his part. Metropolitan approved the sale to Gray, executed its deed to him, and placed the deed and his deed of trust of record in Stoddard county, Missouri, on November 15, 1944.

Gray stresses the following statement in cases between vendor and vendee in support of his contention Bell could not sell or mortgage his interest under his contract with Metropolitan: "The equitable title of the vendee under a contract of sale arises, if at all, through performance, or an unconditional tender of performance, on his part." Wright v. Lewis, 323 Mo. 404, 410, 19 S. W. 2d 287, 289[3], quoted in Waugh v. Williams, 342 Mo. 903, 911, 912, 119 S. W. 2d 223, 227 [11]. See 1 Jones, Cyc., Real Property (1939), 594, Sec. 403. These cases involved the right of the vendee to the title of the vendor under the contract of sale and purchase; i. e., when the vendee could claim the title against the vendor; and, of course, in the absence of performance or a tender of performance of the covenants of the contract, the vendee was in no position to hold the legal title of his vendor.

The instant issue is concerned with the interest acquired by the vendee under a contract for purchase, not the interest retained by the vendor. Absent a valid and enforceable restriction contra in the contract of sale and purchase: "The purchaser under an executory contract for the sale of land, or a bond for title, being in possession and having partly performed his part of the contract, although the legal title remains in the vendor, has an interest in the premises which he may mortgage to a third person." 41 C. J. 374, Secs. 161, 163. See also 41 C. J. 478, Sec. 394. We consider this has been the law of Missouri for many years when applied to transactions between private citizens, although some have been inclined to extend the statement relied upon by Gray beyond the vendor-vendee cases wherein it was made. Section 3401, R. S. 1939, provides: "Conveyances of lands, or of any estate or interest therein, may be made by deed executed by any person having authority to convey the same . . . ." G. S. 1865, p. 444, Sec. 1. See Brant v. Robertson (1852), 16 Mo. 129, 149; Digman v. McCollum (1871), 47 Mo. 372, 376. Additional authorities are mentioned in the margin.[2]

Gray contends the court erred in holding the recording of Bell's deed of trust to Lewis imparted constructive notice to him.

[2]Block v. Morrison, 112 Mo. 343, 20 S. W. 340; Lambert v. St. Louis & G. Ry. Co., 212 Mo. 692, 111 S. W. 550; Levine v. Humphreys, 297 Mo. 555, 567(II), 249 S. W. 395, 398(2); Beckman v. Beckman (Mo. App.), 58 S. W. 2d 490, 491[1], citing cases; 66 C. J. 702, Sec. 262; 36 Am. Jur. 708, Sec. 35; 55 Am. Jur. 835, Secs. 420, 423; 2 Pomeroy's Equity Juris. (5th Ed.), Sec. 368; 5 Tiffany, Real Property (3rd Ed.), Sec. 1384; 9 Thompson, Real Property (1940), Secs. 4785, 4787; 1 Jones, Mortgages (8th Ed.), Sec. 190; 17 Columbia Law Rev. 323.

This is on the theory he was an innocent purchaser for value and was not required to search for conveyances from his vendor prior to the time the vendor acquired the title. Odle v. Odle, 73 Mo. 289; Ford v. Unity Church Soc., 120 Mo. 498, 512, 25 S. W. 394, 397, 398; 2 Devlin, Deeds (3rd Ed.), Sec. 724. The cases relied upon do not conflict with the cases infra; they differ on the facts. Metropolitan's contract to sell to Bell, as stated, was never recorded. Bell's deed of trust to Lewis was acknowledged, and was a proper instrument for record. Secs. 3426, 13161, R. S. 1939. It was recorded. On October 9, 1944, Gray telephoned Metropolitan ▬▬ to ascertain how much had to be paid under Bell's contract to receive a deed. He was advised by Metropolitan and also by Fisher to check the records. He proceeded to the Recorder's office to make inquiry but testified Bell's deed of trust to Lewis was not found. The contract Bell assigned to Gray recognized Bell's right to vend his interests. Gray, while questioning the title passing from Bell to Lewis, contends for that interest passing to him by virtue of the transfer from Bell of his interest and the resultant transfer of Metropolitan's title to him. Bell's interest was as vendible to Lewis as it was to Gray. Gray, of course, knew of Bell's possession of the land prior to October 9, 1944. See, as to effect of this, Hallauer v. Lackey, 353 Mo. 1244, 188 S. W. 2d 30; Langford v. Welton (Mo.), 48 S. W. 2d 860. Gray was purchasing two interests in the land; i. e., Bell's interest under the contract of purchase, an equitable interest, and the legal title held by Metropolitan. It was as much his duty to search the record for transfers affecting the equitable interest as it was his duty to search the record for transfers affecting the legal title. Each was in his chain of title. This is a distinguishing feature between the two lines of authority presented. A case in point is Digman v. McCollum, 47 Mo. 372, 374, 377, holding the purchaser at a sale by the trustee under a duly recorded deed of trust executed by a vendee against his interest in a "title bond," which bond for title was not recorded, was entitled to have title vested in him upon tender of performance under the bond for title to one who, subsequently to the recording of the deed of trust (as Gray in the instant case), purchased the vendee's interest in the bond for title and, performing the contract for purchase, received a deed in fee from the vendor. There was evidence of record that Gray had actual knowledge of Lewis' lien against Bell's interest prior to Bell's transfer to Gray. Gray's contention is overruled. See also Secs. 3427, 3428, R. S. 1939; 45 Am. Jur. 475, Sec. 99; Simonson v. Wenzel, 27 N. D. 638, 147 N. W. 804, L. R. A. 1918 C, 780; Annotation L. R. A. 1918 C, 787; Hackett v. Watts, 138 Mo. 502, 40 S. W. 113; Patterson v. Booth, 103 Mo. 402, 15 S. W. 543; Cooper v. Newell, 263 Mo. 190, 172 S. W. 326; Lee & Boutell Co. v. C. A. Brockett Cement Co, 341 Mo. 95, 116, 106 S. W. 2d 451, 460[7].

■ Error is charged in decreeing the title in Bell and decreeing that Gray had no right, title or interest other than the lien rights mentioned in the decree. We are referred to the authorities hereinbefore considered. The agreement between Gray and Bell of October 9th for the exchange of. Gray's 80 acres for Bell's 547 acres, as reduced to writing on October 11, 1944, contemplated that Gray receive a fee simple title subject only to his purchase money deed of trust to Metropolitan and, in the event Gray's title to the 547 acres was not free and clear of all encumbrances except said deed of trust to Metropolitan, the contract between Gray and Bell was to be null and void. When Metropolitan advised Gray about October 21, 1944, of Bell's deed of trust to Lewis, Gray refused further performance on his part. He, for instance, never delivered or tendered a deed covering his 80 acres to Bell. Gray was not entitled to retain the advantages without discharging the burdens of his contract. The decree sought to restore the parties to their position prior to the agreement to exchange farms, adjusting the transactions subsequently occurring between them and springing from the contract in accord with equity. Gray's cases on the point are to the effect that, when the vendor cannot convey a good and perfect title as here, the vendee must perform and accept such title as the vendor is able to give if he chooses to retain the land; or, if not, he may rescind the contract. Consult Waugh v. Williams, 342 Mo. 903, 911, 119 S. W. 2d 223, 227[11] quoting and citing other cases. They do not disclose error.

■ Gray has no just complaint against the charging of the attorney fees for services rendered Bell against Bell's interest in the land.

■ Gray complains of the adjustment of the account between himself and Bell, stressing only the taxes he paid for 1944 and 1945. The account, including taxes approximating $540, resulted in Bell owing Gray $110.62. Gray says the taxes should ■ be allowed as a lien ahead of Lewis' deed of trust. Bell expressly agreed in the deed of trust to pay all taxes. Gray holds under Bell. The point is not developed and error is not established.

The judgment is affirmed. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by Bohling, C., is adopted as the opinion of the court. All the judges concur.