Jaurel FINCHER and Edna Fincher,
Plaintiffs-Respondents,

v.

MILES HOMES OF MISSOURI, INC.,
and Dorsey Rayl, Sheriff of Pulaski
County, Defendants-Appellants,

and

Lester Stacey, Defendant.

No. 59655.

Supreme Court of Missouri,
en banc.

March 14, 1977.

Rehearing Denied May 10, 1977.

Nicholas G. Gasaway, of Richeson, Roberts, Wegmann, Gasaway, Stewart & Schneider, P. C., Hillsboro, for defendants-appellants.

William C. Morgan, Waynesville, for plaintiffs-respondents.

FINCH, Judge.

This is an appeal from a judgment wherein the trial court quieted title in plaintiffs to a tract of land, invalidated a deed of trust thereon on the basis that the purchaser under a contract for a deed has no right to encumber the property, and impressed the tract with an equitable lien in favor of defendant Miles Homes of Missouri, Inc. for $1,883.03 for materials furnished for a house thereon. On appeal to the Missouri court of appeals, Springfield district, that court, contrary to the decision of the trial court, concluded that a purchaser under a contract for a deed has an interest in the property which may be mortgaged. Nevertheless, it affirmed, concluding that terms in this contract of sale prohibited Staceys

from mortgaging their interest. Furthermore, said the court, even if rights did accrue thereunder, they were extinguished when the purchaser, having defaulted, surrendered his rights under the contract to seller. Thereafter, we ordered the case transferred to this court and we now decide it as though here on direct appeal. We reverse and remand.

On May 3, 1967, plaintiffs entered into a contract with defendant Lester Stacey and his wife, since deceased, to sell them a tract containing approximately one-half acre. By its terms, plaintiffs were to sell to buyers the tract described therein for $1,200, payable $200 down with the remainder payable in monthly installments of $47.50 each, which included interest. A few days later the same parties executed a second "Contract for Sale of Real Estate"[1] dated May 11, 1967, by which the parcel described therein was to be sold on the same terms as to price and schedule of payments as those in the May 3, 1967 contract, with certain additional restrictions and conditions not spelled out in the prior agreement. This latter contract, according to the evidence, was intended to supercede the prior agreement and constitute the final agreement between the parties. The description in the contract of May 11, 1967, was more detailed and varied somewhat, as later noted, from the earlier description. Neither contract was recorded.

The Staceys also entered into an agreement with Miles Homes dated May 18, 1967, to buy a pre-cut home for erection on the tract purchased by them from plaintiffs. The contract for $6,378 covered materials for the house but no labor. In addition, the contract called for a charge for various loan services of $200. The Staceys paid $2 down, leaving a balance due Miles Homes of $6,576. To evidence that indebtedness, the Staceys executed a note to Miles Homes for $6,576 payable in monthly installments of $52 with the remaining unpaid balance due and payable November 30, 1970. The note was secured by a deed of trust on the tract

1. The May 3, 1967 instrument was captioned "Deposit, Receipt and Agreement for Sale."

described in the May 3 contract between Staceys and plaintiffs. That deed of trust was recorded June 2, 1967. Pursuant to the contract, Miles Homes delivered materials to the site and the Staceys then erected a home thereon.

Staceys made payments to plaintiffs from time to time on the purchase price of the lot. On April 29, 1969, the balance due under the sale contract was $221.70. No further payments were made by Staceys to plaintiffs. Sometime thereafter, Mrs. Stacey died and in December 1971, Mr. Stacey vacated the premises. Plaintiffs meanwhile had visited the house to attempt to collect. additional payments from Stacey but to no avail. Finally, plaintiffs notified Stacey that if he did not pay the balance, they would be required to take action. Stacey then informed plaintiffs that he would have to let the property go. On March 1, 1972, at the request of plaintiffs, he signed on the bottom of the May 11, 1967, contract a statement entitled "Release by Buyers" which acknowledged his default and the fact that he had no remaining interest in the property. Stacey then removed his furniture from the house and plaintiffs took possession. They expended certain sums to complete and repair the house in certain respects, and thereafter they rented it for $110 per month.

Meanwhile, Staceys also had made payments to Miles Homes on their note. Total payments thereon amounted to $2,587.24.[2]

In September 1973, plaintiffs instituted this action. Count One of their second amended petition, on which the case was tried, sought to quiet title in plaintiffs. Count Two was in the nature of a declaratory judgment action which sought to have the court declare that the deed of trust given by Staceys to Miles Homes was not a lien on the property. Count Three, pleaded in the alternative, sought a money judgment if plaintiffs were found not to be the owners of the property.

In its answer and counterclaim, Miles Homes admitted that the plaintiffs had legal title to the tract in question, but alleged that equitable title had been vested in the Staceys as a result of the contract to purchase and that the Staceys had a right to execute a deed of trust on that equitable interest. Consequently, alleged Miles Homes, it had an interest in the property by virtue of the note and deed of trust from the Staceys. Miles Homes offered to pay the unpaid balance of the purchase price on the lot plus good faith improvements by plaintiffs and sought, on payment thereof, to receive a deed to the property, or, in the alternative, sought a decree that plaintiffs, while holding the legal title, did so with an obligation to pay Miles Homes the balance due on its note and deed of trust. Finally, Miles Homes pleaded that if its deed of trust was not enforceable, it was entitled to an award of the reasonable value of materials furnished, asserted to be $10,000.

The trial court first quieted title in the plaintiffs. It then held that the deed of trust given by Staceys to Miles Homes was not a valid lien on the real estate. The latter holding was based on conclusions that (1) Staceys had no right to execute a deed of trust on the tract, (2) that the real estate described in the deed of trust was not the same real estate described in the contract of May 11, 1967, and (3) that such interest, if any, as could have been conveyed by Staceys under the deed of trust was extinguished when plaintiffs exercised their rights under the contract of sale to terminate that contract for default thereunder. The trial court went on, however, to hold that Miles Homes was entitled to receive the sum of $3,600, the reasonable value of materials furnished by it and located on the premises, less payments received, leaving a balance of $1,883.03 for which a lien on the property was established.

No complaint is made on appeal concerning the holding of the trial court that fee

**2.** Staceys had purchased additional materials as extras from Miles Homes but it does not claim that these are secured by its deed of trust dated May 18, 1967. Hence, it is not necessary in this case to be concerned with any amount due and owing from Stacey to Miles Homes on account of those extras.

simple title was vested in plaintiffs. The objections made relate only to the legal conclusions of the trial court that for various reasons the deed of trust given by Staceys to Miles Homes was not a valid lien on the premises.[3]

1. *Did Staceys have a right to execute a deed of trust on property which they had contracted to purchase under a contract for a deed?*

■ We conclude that they did. In *Lewis v. Gray*, 356 Mo. 115, 201 S.W.2d 148 (1947), this court held that absent a valid and enforceable restriction to the contrary in a contract for the sale of land, a purchaser's interest therein pursuant to such contract can be mortgaged. In other words, the court recognized that a purchaser with only equitable title to land can execute a note to a third party and give as security for that note a deed of trust on his interest under the terms of that contract. In so holding, the court said, 201 S.W.2d at 151:

"The instant issue is concerned with the interest acquired by the vendee under a contract for purchase, not the interest retained by the vendor. Absent a valid and enforceable restriction contra in the contract of sale and purchase: 'The purchaser under an executory contract for the sale of land, or a bond for title, being in possession and having partly performed his part of the contract, although the legal title remains in the vendor, has an interest in the premises which he may mortgage to a third person.' 41 C.J. 374, Secs. 161, 163. See also 41 C.J. 478, Sec. 394. We consider this has been the law of Missouri for many years when applied to transactions between private citizens, although some have been inclined to extend the statement relied upon by Gray beyond the vendor-vendee cases wherein it was made. * * *"

See also 59 C.J.S. Mortgages § 75e (1949).

Plaintiffs argue that even if such a deed of trust is permissible as a general proposition, it was prohibited in this instance because in paragraph seven of the contract dated May 11, 1967, after providing that the agreement was binding on the parties and their heirs, executors, administrators, and assigns, the contract then stated, "provided, however, that Buyers may not assign their rights hereunder in whole or in part without written consent of Sellers". Plaintiffs argue that the practical and legal effect of the deed of trust given by the Staceys to secure the note given to Miles Homes was to assign a portion of the Staceys' rights in violation of the foregoing provision.

We conclude that the quoted language did not forbid the execution of the deed of trust by the Staceys. An assignment is to be distinguished from a mortgage or deed of trust. The rule is stated in 6A C.J.S. Assignments § 5 (1975) as follows:

"Whether or not a transfer of a particular right or interest is an assignment or some other transaction depends, not on the name by which it calls itself, but on the legal effect of its provisions, * * *

"A mortgage is not an assignment, and differs from an assignment in that it creates only a lien in favor of the mortgagee, whereas an assignment passes the whole interest in the thing assigned. . . . An assignment of property as security for a debt is usually regarded as constituting a mortgage of the property."

Consistent with the foregoing rule is what this court said in *R. L. Sweet Lumber Co. v. E. L. Lane, Inc.*, 513 S.W.2d 365, 368 (Mo. banc 1974), as follows:

" 'The nature of the title conveyed under a deed of trust was well set forth in *City of St. Louis v. Koch*, 156 S.W.2d 1, 5[3, 4] (Mo.App. 1941): "A deed of trust in the nature of a mortgage given on land to secure the payment of a debt is held to be 'a lien and nothing more. * * So viewed, it is neither an estate in land, nor a right to any beneficial interest therein. It is neither jus in re nor jus ad

---

**3.** Complaint is also made to the amount of the equitable lien allowed to Miles Homes as alternative relief. We need not consider that proposition, however, in view of our conclusion that the deed of trust was valid and that Miles Homes is entitled to relief thereunder.

rem. It is merely the right to have the debt, if not otherwise paid, satisfied out of the land. The debt is the essence of the mortgage, the lien a mere incident that follows it as a shadow (*Lipscomb v. Talbott*, 243 Mo. 1, 31, 147 S.W. 798).' *Missouri R.E. & Loan Co. v. Gibson*, 282 Mo. 75, 220 S.W. 675, 676. We must hold, therefore, that appellant's ownership of the deed of trust on the property did not constitute him the owner of the title to the property. He had 'a lien and nothing more', which gave him only 'the right to have the debt, if not otherwise paid, satisfied out of the land.' *Missouri R.E. Loan Co. v. Mary J. Gibson et al., supra.* See also *Dickerson v. Bridges*, 147 Mo. 235, 244, 48 S.W. 825." * * *' "

See also *In re Title Guaranty Trust Co.*, 113 S.W.2d 1053 (Mo.App. 1938), where the court said that "[i]n Missouri a mortgage or deed of trust is treated as a mere security for the payment of the debt and not as an outright conveyance of the title." *Id.* at 1057.

2. *Did the Stacey deed of trust contain a description so deficient that it failed to describe the lot sold by plaintiffs to Staceys on which the house was constructed?*

■ The evidence discloses that in January of 1967, plaintiffs purchased a tract containing 50 acres more or less located in the N ½ of the SW ¼ and in the SE ¼ of the NW ¼ of Sec. 26, Twp. 36, Range 11 W in Pulaski County. The 50 acre tract was described by metes and bounds, a portion of the description running along the west side of a county road. They then subdivided a portion thereof (Fincher thought about six or seven acres) into 11 lots. One of these was the one plaintiffs contracted to sell to the Staceys.

On May 3, 1967, the first of the written agreements between plaintiffs and Staceys was executed. It was drafted by plaintiff Jaurel Fincher and described the property to be sold as follows:

"Lot being located along the west side of the County road and having a road front-age of 70 ft. and going back to the property line which is approximately 270 ft. All lying in a Pt. of the SE ¼ of the NW ¼ of the SW ¼ of Sec. 26, Twp. 36, Range 11. The NE corner of the lot is 630 ft. S. of a corner established by a survey."

On May 11, 1967, a second and more detailed contract of sale was executed by the same parties. It was drafted by the attorney for plaintiffs and described the property as follows:

"All that part of the Southeast quarter of the Northwest quarter of Section 26, Township 36 North, Range 11 West of 5th P.M. described as follows: Beginning at the Southwest corner of last said forty; thence East 277.9 feet along the South line of last said forty to intersection with the West line of County Road; thence N. 3° 14' W. 48 feet along the West line of said County Road; thence West parallel with the South line of said forty to the West line of said forty and to the true point of beginning of the tract herein described; thence East parallel with the South line of said forty to the West line of said County Road; thence N. 3° 14' W. 70 feet along the West line of said County Road; thence West parallel with the South line of said forty to the West line of said forty; thence South along the West line of said forty to the true point of beginning of the tract herein described. RESERVING, unto the Sellers, their heirs and assigns, an easement across the above described premises for water and sewer lines and facilities and for telephone and electrical lines, for installation and maintenance of the same."

It is clear from the evidence that this contract was intended to be the final contract between the parties and that it was intended to cover the same lot which plaintiffs had intended to sell to Staceys by the May 3 contract.

The deed of trust from Staceys to Miles Homes contains precisely the same legal description as that in the May 3 contract.

Plaintiffs now contend that this description is an incomplete and insufficient land description and that it does not cover the tract described by metes and bounds in the May 11 contract.[4]

The courts of this state have followed the rule that "In general, any description in a deed is sufficient if it affords the means of identification of the property." *Hamburg Realty Co. v. Woods*, 327 S.W.2d 138, 150 (Mo. 1959). In *First National Bank of Cape Girardeau v. Socony Mobil Oil Co.*, 495 S.W.2d 424, 434 (Mo. 1973), the court said:

> "The description was not well drawn but the court properly could find from the evidence that the property in question could be located. This would satisfy the rule that: 'Although the description need not be technically accurate in order to make an instrument operative as a conveyance, it must identify the property sufficiently to enable a surveyor to locate it * * *. The description must be sufficiently certain to distinguish the land intended to be conveyed from all other land." Eckhardt and Peterson, Possessory Estate, Future Interests and Conveyances in Missouri, Volume 23, V.A.M.S. pp. 72, 73. * * *"

In commenting on the reluctance of Missouri courts to hold a description insufficient and void unless compelled to do so by its ambiguity and uncertainty, McCune Gill, a noted expert on Missouri titles, stated in volume IV of his Treatise on Real Property Law in Missouri 1474 (1954):

> " * * * It seems to be beyond the capabilities of the writers of descriptions in deeds, wills and court proceedings to put down accurate descriptions of property, or having put them down to observe the obvious precaution of reading them after they have been put down to correct any errors therein.
>
> "But the courts, staffed as they are with sensible and understanding judges, have been most lenient in construing erroneous descriptions. They say that when a man tries to convey something that he owns and possesses he is really trying to convey it and not something that he does not own or possess, that when he tries to convey a building he intends to convey the building wherever it is, that when he makes mistakes or omissions they will be disregarded if there is enough other description to identify the property, that the parts of the description where he is least likely to make mistakes will govern, and finally that the title will be considered to comply even with the rather exacting requirements of marketability even though the description is mildly erroneous. * * *"

Is the description which Fincher prepared and put in the May 3 contract and which was then duplicated in the deed of trust to Miles Homes so deficient that it affords no means of identifying the lot intended to be described? Is it so bad that a surveyor could not locate it? We conclude that the answer to each question is no. In the first place, this is one of 11 lots which Fincher created by subdividing 6 or 7 acres in the 50 acre tract which he purchased January 12, 1967, from Ottber Prewitt and LaVena Prewitt, the deed to which is recorded in Book 204, p. 508 in the office of the recorder for Pulaski County. The description therein discloses that one boundary runs along the west side of a county road. The lot described in the May 3 contract fronts 70 feet on that county road and it runs to the back of the property line which is described as being approximately 270 feet. Thus, we have a lot which runs between the west side of the county road and the back property line, the lot being 70 feet in width by approximately 270 feet in depth. The description then indicates a starting point by telling us that the NE corner of the lot is 630 feet south of a corner established by a survey. It does not identify that survey

---

**4.** We do not read plaintiffs' petition to have so alleged. Rather, that petition alleged that "the said Deed of Trust is or may purport to be a lien on the real estate of plaintiffs described in Paragraph #1" of plaintiffs' petition which was the description taken from the May 11 contract.

but it is reasonable to conclude that Fincher, in writing the description, was aware of the survey and the corner established by it. We cannot hold on the record before us that a surveyor could not locate it.

The description in the May 3 contract states that this lot lies in the SE ¼ of the NW ¼ of the SW ¼ of Sec. 26, Twp. 36, Range 11 whereas the May 11 contract described the lot as being in the SE ¼ of the NW ¼ of Sec. 26, Twp. 36 North, Range 11 West. Plaintiffs in their brief argue that the descriptions call for land in different quarter-quarter sections and that this makes the description bad. In *McCormick v. Edwards*, 351 Mo. 1017, 174 S.W.2d 826 (1943), the court dealt with a situation wherein the words "of the northwest quarter" were erroneously repeated in a description. The court so recognized and held the description good, omitting that extra call as surplusage. In this case Fincher undertook to describe this 70 foot lot taken from a 50 acre tract he had purchased. Part of that 50 acre tract was located in the SE ¼ of the NW ¼ and part was in the north half of the SW ¼, all in Sec. 26, Twp. 36, Range 11. In writing the description, he obviously wrote SE ¼ of the NW ¼, one of the calls and then added the reference to the SW ¼, the other call. He now seeks to take advantage of that error (his own) and say that a deed of trust which utilized that description is so bad that it is void or that it describes property other than the lot which he contracted to sell to the Staceys. We reject that contention and decline to hold in this case that the description in the deed of trust was so deficient as to invalidate the deed of trust.

3. *Was Miles Homes' lien under its deed of trust from the Staceys eliminated by the termination of Stacey's rights under his purchase contract pursuant to the release he gave to sellers on March 1, 1972?*

This apparently is a question of first impression in Missouri. Necessarily, it requires consideration of all the pertinent facts as they relate to the equities of the situation. We restate them for that purpose.

Finchers in 1967 contracted to sell Staceys a vacant lot for $1200, to be paid in installments. They did not utilize the standard procedure of conveying by deed, taking and recording a deed of trust for the unpaid balance. If they had and Finchers had foreclosed their deed of trust for nonpayment of the note, we would not have the problem which now confronts us. Instead they gave a contract for a deed, to be delivered upon payment of the total purchase price, and did not even record the contract. Staceys paid all of the purchase price except $221.70.

Meanwhile, Staceys had constructed thereon a house containing a living room, kitchen, 3 bedrooms and a bath. Pre-cut material for the house amounting to $6378 was purchased from Miles Homes and a deed of trust was given therefor. Some additional items for the house were purchased by Stacey on open account and Stacey then did the construction work.

On March 1, 1972, Finchers, on the basis of the unpaid balance of $221.70 plus interest thereon of $43.86, a total of $265.56, terminated Stacey's rights in the property by having him so acknowledge on the bottom of the contract of sale. In this suit they have claimed that the surrender of Stacey's rights had the effect of terminating Miles Homes' rights as well.

It is undisputed that prior to the termination by Finchers of Stacey's rights on March 1, 1972, no notice of any kind was given to Miles Homes as to what, it any, balance was due from Stacey to Finchers on the purchase price of the lot, or what, if any delinquency existed. Neither did Finchers give any notice to Miles Homes of an intention on their part to terminate Stacey's rights and whatever rights Miles Homes had under its recorded deed of trust, even though the evidence of Fincher himself disclosed that he knew almost from the outset about Miles Homes' selling Staceys the materials for a house which Staceys then constructed on this lot.

On April 14, 1972, Fincher wrote Miles Homes as follows: "I am writing in regard to a house plan you sold to Lester Stacy [sic] here. I have made a deal with Stacy [sic] and would like to talk withone [sic] of your representives [sic] and get this worked out if possible.

"Let me know when someone from your company will be in the area."

This letter said nothing about any unpaid balance on the lot or terminating Stacey's interest for default or any idea of foreclosing any rights of Miles Homes. It said nothing to indicate in any way that the balance on Stacey's deed of trust was to the affected or was in jeopardy in any way.

Under such circumstances, should the agreement between Stacey and Finchers terminating Stacey's rights under his purchase contract have the effect of destroying Miles Homes' rights under its deed of trust, in effect giving plaintiffs a windfall of the house? In 59 C.J.S. Mortgages § 184, the following rule is stated:

"A mortgage given by one holding land under an executory contract for its purchase covers his interest, whatever it may be, at the date of the mortgage, giving the mortgagee the right to complete the purchase if his mortgagor refuses to do so; *and the mortgagee cannot be ousted of his rights by a rescission of the contract of sale by the original parties to it.* * * *" (Emphasis supplied.)

We agree with the view, expressed in the italicized language, that mere rescission of the original contract of sale by the parties thereto does not oust the mortgagee of his rights under a deed of trust taken from the purchaser in the executory contract of sale. To so permit would open the door to connivance for the purpose of eliminating the rights of a intervening party who might well, as here, have furnished in good faith property or money with which the property was improved and enhanced in value. Accordingly, we hold that the action of Stacey in releasing his interest in the purchase contract on March 1, 1972, did not terminate the rights of Miles Homes under its deed of trust of May 18, 1967.

The question, then, is whether for other reasons the mortgagee's interest may have been terminated and if not, what rights the mortgagee possesses.

Several courts have decided cases which involved the resolution of rights of mortgagees under somewhat comparable situations. In *Knauss v. Miles Homes, Inc.*, 173 N.W.2d 896 (N.D. 1969), a vendor in a contract for a deed sought to quiet title as against a mortgagee (Miles Homes) which had taken a deed of trust from the vendee in the contract of sale. Vendor had previously brought suit against vendee and had successfully terminated his rights for default under the contract. In that first action, the vendor, although he was found to have had knowledge of the erection of the house and of mortgagee's interest, did not make Miles Homes a party. The court concluded that Miles Homes' interest as mortgagee was not terminated by the original action between vendor and vendee. The court reversed the judgment of the trial court in favor of vendor and against Miles Homes, and remanded the case for resolution on equitable principles, with mortgagee to be given a reasonable time to make good the default of the vendee under the contract of sale, thereby protecting its interest under its deed of trust.

In *First Mortgage Corp. of Stuart v. de-Give*, 177 So.2d 741 (Fla.App. 1965), the court actually reversed a summary judgment which the trial court had entered. In the course of its opinion, the court said at 746: "A mortgage given by one holding land under an executory contract for its purchase covers his interest, whatever it may be, at the date of the mortgage, and the mortgagee cannot be ousted of his rights by a subsequent rescission or reconveyance by the original parties." The court then expressed its views as to the rights of such mortgagee, saying:

"The mortgage by a purchaser of his interest in a contract for the sale of real property merely gives the mortgagee the right to complete the purchase if the mortgagor refuses to do so, and the mort-

gagee takes no greater rights than the purchaser had. In other words, the mortgagee acquires a right to purchase the property for the consideration stipulated in the contract of purchase, and the enforceability of the mortgage depends upon the condition that the contract be kept in force by the subsequent performance of its terms. *Young v. Clay* [139 Or. 427, 10 P.2d 602] supra; *Sheehan v. McKinstry* [105 Or. 473, 210 P. 167] supra; *Nelson v. Bailey*, 1959, 54 Wash.2d 161, 338 P.2d 757, 73 A.L.R.2d 1400; 59 C.J.S. Mortgages § 184." *Id.*

In *Norlin v. Montgomery*, 59 Wash.2d 268, 367 P.2d 621 (1961), the court decided a case wherein a mortgagee had brought an action to foreclose a mortgage on the equitable interest of a purchaser under an installment contract to purchase land. The purchaser had defaulted on payments to the mortgagee and on payments to vendor under the contract of sale and had abandoned the property. Vendor cross-claimed, seeking to have title quieted in him. Citing an earlier case of *Nelson v. Bailey*, 54 Wash.2d 161, 338 P.2d 757, 73 A.L.R.2d 1400 (1959), as authority, the court upheld the mortgage on purchaser's interest. However, the court held that the mortgagee had no right to possession until he was successful bidder at a foreclosure sale and received a sheriff's deed to the property. It followed, said the court, that before that time the court should not require at mortgagee's request an accounting of the rents and profits from the premises.

The same court subsequently had another case of this type, reported as *Kendrick v. Davis*, 75 Wash.2d 456, 452 P.2d 222 (banc 1969). The representative of the estate of a deceased vendor brought an action to quiet title to property covered by a forfeitable installment sale contract and sought to recover possession of the property. The purchaser under that contract had mortgaged his interest under the contract and thereafter defaulted on the contract to purchase. The trial court entered summary judgment against the contract purchasers but held

that mortgagee was entitled to make payments to reinstate the contract of sale and could continue to make the monthly payments which would reinstate the mortgage on the property. On appeal the supreme court reversed, holding that the forfeiture was effective as to mortgagee as well as vendee. This conclusion was based on the proposition that vendor had no knowledge, actual or constructive, of the rights of mortgagee who had loaned money to vendee. Under such circumstances, the obligation was on mortgagee to give notice to vendor of his interest rather than vendor having an obligation to search the record and give notice to mortgagees thereby discovered. Since mortgagee did not do that, vendor had no obligation to give notice. However, in reaching that conclusion, the court said, at 226:

"If the plaintiff vendor had received actual notice of the interests of the mortgagees of the purchasers, he would be required to recognize their interests and give them notice of any intent to forfeit the contract. *Scott v. Farnam*, 55 Wash. 336, 104 P. 639 (1909). Further, under such circumstances, the mortgagees would have the right to make or tender the payments to the vendors necessary to protect their security, *i.e.*, to keep the contract in effect. *Scott v. Farnam, supra*. However, the mortgagees would have no right to possession nor to require the transfer of title under the contract until they acquired the interests of the purchaser-mortgagor, either by foreclosure or by the purchaser's conveyance thereof. RCW 7.28.230; *Howard v. Edgren*, 62 Wash.2d 884, 385 P.2d 41 (1963)."

On this question of the rights of a mortgagee of the rights of a purchaser under an executory contract of sale, 59 C.J.S. Mortgages § 184 says:

"* * * However, the mortgagee will take no other or greater rights than the vendee had, that is, he will acquire simply a right to purchase the property for the consideration stipulated in the contract of purchase, or to require a conveyance of

the estate from the vendor according to the terms of the agreement, on completing the payment of the purchase price; and the enforceability of the mortgage depends on the condition that the contract be kept in force by the subsequent performance of its terms. When a conveyance is made to the mortgagor pursuant to the contract, the mortgage then attaches on the legal title thus vested in him."

In citing and discussing the foregoing authorities, we should not be understood as adopting them as the law of this state. Rather, as indicated, we discuss them simply to illustrate what other courts and authorities have said on the subject. It is apparent that they are not uniform in their position as to mortgagee's rights. We have considered them, of course, in reaching a conclusion as to the rights of the mortgagee herein.

▋ In this case, unlike the situation in *Kendrick v. Davis, supra,* vendors knew of the interest of Miles Homes. We hold that they did have an obligation to notify Miles Homes of the delinquency which existed and of their intention to forfeit the contract for that reason. That would have given Miles Homes an opportunity to protect its interest. That notice was not given and, hence, that which has occurred has not had the effect of terminating the rights of Miles Homes under its deed of trust.

Having so concluded, it follows that we must reverse the judgment of the trial court and remand the case in order that the rights of Miles Homes as mortgagee may be declared and enforced. To that end, the court on remand should determine the present unpaid balance on Stacey's note and deed of trust to Miles Homes, taking further testimony for that purpose, if necessary.

When that has been done, Miles Homes is then entitled to have its deed of trust foreclosed and the decree should so provide. From the proceeds of such sale, the costs thereof should be paid, after which proceeds

of the sale should be applied in this order: first, the unpaid balance due Finchers on their contract of sale to Staceys; second, reimbursement of Finchers for those sums necessarily and reasonably expended in order to complete or repair the house and put it in shape for rental; third, payment to Miles Homes of the amount due it on Stacey's note and deed of trust; and finally, to Finchers as record title holders as well as successors in interest to the Staceys by reason of their cancellation of their contract to purchase and the surrender of their rights thereunder to Finchers.

We recognize that plaintiffs might prefer to pay the balance on the Miles Homes deed of trust rather than to have the property sold in a foreclosure sale. Accordingly, in fashioning its decree, the trial court may give to plaintiffs the option of paying Miles Homes the balance due them on their note and deed of trust after that balance has been determined. If plaintiffs avail themselves of that opportunity, they would then be entitled to have title quieted in them free and clear of any claim of Miles Homes. However, if plaintiffs do not so elect, the decree should direct that the foreclosure sale be conducted and the proceeds applied as indicated.

▋ By their pleadings in this case, Miles Homes seeks an accounting of the rents and profits from the house while it has been in possession of plaintiffs and it also speaks in its pleadings of receiving a deed to the premises if it pays to plaintiffs the balance due them under the contract of sale, plus sums expended for good faith improvements. There are statements in some of the outstate cases to which we have referred and in 59 C.J.S. Mortgages, which indicate a recognition of such a right. However, we have concluded that Miles Homes is not entitled to receive a deed from plaintiffs by paying the balance on the contract of sale, plus sums expended for improvements. Miles Homes only held a security interest in the property. It held a note secured by a deed of trust. That entitles it to collect the amount which that

lien secures, but does not entitle it to more than that. Plaintiffs as title holders and as successors to the rights of Stacey were entitled to the rents and profits and are entitled to the real estate in question, subject to the deed of trust held by Miles Homes.

The judgment is reversed and the cause remanded for further proceedings in accordance with the views expressed in this opinion.

REVERSED AND REMANDED.

SEILER, C. J., and MORGAN, BARDGETT, HENLEY and DONNELLY, JJ., concur.

RENDLEN, J., not participating because not a member of the court when cause submitted.

PER CURIAM.

In their motion for rehearing, Finchers argue that the opinion as written will have the effect of permitting a purchaser at the foreclosure sale to acquire a greater interest in the real estate than Stacey possessed at the time the deed of trust was given. This contention is based on the proposition that the second contract for a deed dated May 11, 1967, which superceded the earlier contract of May 3, 1967, recited that the sellers (Finchers) reserved an easement across the tract "for water and sewer lines and facilities and for telephone and electrical lines, for installation and maintenance of the same".

■ This question was not discussed or even mentioned in the briefs filed and was not addressed in the opinion filed. However, it is clear that if Finchers do not elect to pay the balance due to Miles Homes and foreclosure is necessary, the purchaser will take the property subject to the easements reserved by Finchers in their later contract with Stacey. The decree to be entered in the trial court on remand should so provide. If the trial court concludes, from evidence presented on remand, that the description contained in the second contract of sale is simply a more detailed description of the lot intended to be described in the first contract, the decree could order that the later description, including the reservation of easements, be used in the decree ordering the foreclosure sale.

Respondents' motion for rehearing is overruled.