In the Matter of Karl Kenneth JONES, and Bonnie Maxine Jones, Debtors.

Arthur B. FEDERMAN, Trustee, Plaintiff,

v.

Earl E. JONES, and Ethelene Jones, Defendants.

Bankruptcy No. 84–01154–SJ. Adv. No. 84–0327–SJ.

United States Bankruptcy Court, W.D. Missouri, St. Joseph Division.

Dec. 26, 1984.

Arthur B. Federman, Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke, P.C., Kansas City, Mo., for plaintiff.

Robert B. Miner, St. Joseph, Mo., for debtors/defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT AVOIDING TRANSFER

DENNIS J. STEWART, Chief Judge.

The plaintiff trustee in bankruptcy brings this action to avoid and recover a certain transfer of the debtors' interest in certain real property to the defendants within the year next preceding bankruptcy under § 548 of the Bankruptcy Code. After joinder of the issues by the pleadings, the action came on before the bankruptcy court for hearing of its merits on November 30, 1984, in St. Joseph, Missouri. The evidence which was then adduced establishes the following findings of fact: The within title 11 proceedings were commenced by the debtors on April 11, 1984. Some eight years earlier, the debtors had, in December of 1976, entered into a contract for deed with Mr. Jones' parents with respect to the real property in question.[1] Under its material terms, the debtors were purchasers and the parents were sellers. The total purchase price, according to the letter of the governing contract for deed was to be the total sum of $48,000.00, payable in installments.[2] In March 1984, well within the year next preceding bankruptcy, the debtors assigned all their rights in the contract for deed to the defendants. The doc-

---

1. Under the law of Missouri a contract for deed grants an equitable interest to the party contracting to purchase the property subject to a mortgage or deed of trust. It is a recognized interest in property under Missouri law. See *Fincher v. Miles Homes of Mo., Inc.,* 549 S.W.2d 848, 851 (Mo. en banc 1977).

2. The contract terms were that $500 was to be paid on or before December 1, 1977, and $500 every December 1 thereafter until the sum of $48,000 plus 5% per annum interest was fully paid.

ument constituting the assignment recited that the consideration for the transfer was to consist in certain personal services provided by the defendants.[3] The defendants, after the assignment, continued to live at a great distance from the property, over 200 miles away, and they have not used the property in any manner. All of the farming of the land was admittedly done by the debtor Karl Kenneth Jones, although he insists that he only did it "for" his brother, the defendant Earl E. Jones. The debtor Karl Kenneth Jones also made numerous repairs and improvements to the property, all of which the defendant Earl E. Jones claims to have paid him for.

The assignment of rights in the contract for deed took place after the debtors had consulted an attorney with respect to taking bankruptcy and after they realized that they would have difficulty in paying their outstanding debts. In the same general period of time, the debtor Karl Kenneth Jones, in the course of an effort to obtain credit from one source, stated that the contract-for-deed arrangement which he had with his mother was intended to have the effect of keeping the underlying real property unavailable to creditors.

The value of the interest in real property which was transferred to the defendant is an issue on which the evidence is conflicting. The evidence which has been presented by the defendant tends to show that the underlying real property was worth less than the total sum of $48,000.00 which the debtors agreed to pay for it,[4] while the evidence adduced by plaintiff tends to show the existence of a considerable equity in the property.[5]

*Conclusions of Law*

The applicable decisional authority is clear to the effect that the purchaser in a contract for deed has a mortgagable and transferable interest in the underlying real property. See, e.g., *Fincher v. Miles Homes of Missouri, Inc.*, 549 S.W.2d 848 (Mo.1977), and other cases and authorities.[6] This interest would have passed to the trustee in bankruptcy under § 541 of the Bankruptcy Code, absent the prebankruptcy transfer. Even in the absence of any actual equity in the property, the debtors, and hence their successor in interest, the bankruptcy estate, have a cognizable interest in the property. *In re Lovett*, 11 B.R. 123 (W.D.Mo.1977).[7] Accordingly, under § 548 of the Bankruptcy Code, as applicable to this action, that interest is recoverable by the trustee by means of avoiding any transfer made with actual intent to hinder, delay and defraud creditors.[8] The

---

3. The assignment by the debtors of their interest in the property to the defendants recited that:

    "in exchange for the Third Parties undertaking the Second Parties' duties, and the First Party consenting to the same, the Second Parties hereby assign all of their right, title and interest in and to the original contract with the First Party of December, 1976, mentioned above to the Third Parties."

4. The defendants produced expert opinion to the effect that the property was worth less than $48,000. But, for the reasons stated in the text of this memorandum, the court does not predicate its decision on the provisions of § 548(a)(2) of the Bankruptcy Code which permit the trustee to recover property transferred by the debtor within a year of bankruptcy, while insolvent, and for less than the reasonable equivalent of value. Recovery in this action, rather, is predicated on the provisions of § 548(a)(1) which provide for the trustee's recovery of property transferred with actual intent to hinder, delay and defraud creditors.

5. In this respect, the trustee's case must necessarily focus on an alleged admission that the property has a total value of $145,000. But see note 4, *supra*.

6. See note 1, *supra*.

7. "The pertinent sentence, explaining another section of the Code relating to exemptions, states: 'Thus, for example, if a debtor owned a $2,000 car, subject to a $1,200 lien, the debtor could exempt his $800 interest in the car.' In the quoted sentence it is stated that the 'debtor owned a $2,000 car,' thus implying that the debtor had some property interest in the entire car. While the equity is thus an 'interest,' it is not necessarily the only interest of the debtor in the property." *In re Lovett*, 11 B.R. 123, 125 (W.D.Mo.1981).

8. Section 548(a)(1) of the Bankruptcy Code provides for recovery without regard to the amount or adequacy of consideration paid by the transferee if the transfer was within a year of bank-

evidence which has been adduced in this action sufficiently, albeit circumstantially,[9] evinces the intent of the debtors to hinder, delay and defraud creditors. There is a great confluence of several badges of fraud: (1) transfer to a relative; (2) at a time when bankruptcy was within the contemplation of the transferors and very shortly before the actual filing of the bankruptcy petition; (3) at a time when the transferors were unable to meet their due debts; and (4) with retention of actual use and enjoyment of the property in the transferors.[10] Further, at a relevant time, the debtor Karl Kenneth Jones admitted that his intention in the entire contract-for-deed arrangement was to keep the real property out of the hands of their creditors. It is therefore found and concluded by the court that the assignment to defendants was a transfer with actual intent to hinder, delay and defraud creditors within the meaning of § 548, *supra*.[11] It is therefore

ORDERED, ADJUDGED AND DECREED that the defendants forthwith, and within 30 days of the date of entry of this order, transfer to the plaintiff trustee in bankruptcy all their right, title and interest in the subject property.

---

9. "It has always been held that fraud may be proven by circumstantial evidence, if that evidence affords a clear inference of fraud, and amounts to more than a mere suspicion or conjecture." *Herrold v. Hart,* 290 S.W.2d 49, 55 (Mo.1956). "While it is undoubtedly true as a general legal proposition that 'fraud is not to be presumed, but must be proved by the party alleging it,' yet it is equally true, that fraud is seldom capable of direct proof, but for the most part has to be established by a number and variety of circumstances, which, although apparently trivial and unimportant, when considered singly, afford, when combined together, the most irrefragable and convincing proof of a fraudulent design." *Allison v. Mildred,* 307 S.W.2d 447, 453 (Mo.1957).

10. "There are a number of indicia or badges of fraud and, although usually none by itself establishes fraud, a strong inference of fraud arises from a concurrence of several badges of fraud; such as: A conveyance in anticipation of suit; a conveyance to near relatives; inadequacy of consideration; unusual clauses in instruments or unusual methods of transacting business; transfer of all or nearly all debtor's property; insolvency; retention of possession by the debtor; the failure to produce available explanatory or rebutting evidence when the circumstances attending the transfer are suspicious." *Allison v. Mildred,* note 9, *supra,* at 454. Each of these catalogued badges of fraud is present in this case. The transfer was made within a year of bankruptcy and in anticipation of creditor actions, see note 11 *infra;* it was to a near relative; it was for virtually no consideration, see note 3, *supra;* it was an unusual method of transferring property and the instrument of transfer contained the unusual recitations that the debtors at once forfeited and, at the same time, transferred their interest; they retained actual possession of the property; and none of these badges was sufficiently explained.

11. The evidence shows that, when seeking loan of money to cover existing debts, the debtor Karl Kenneth Jones told at least one prospective lender that creditors would not be able to reach the property in question because of the contract-for-deed device wherein it was supposed that his mother retained title. But see note 1, *supra,* and the decision there cited.

ruptcy and "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred ..., indebted." In respect of the recovery of such a transfer, the only role which value can seemingly play is that, under § 550(d)(1) of the Bankruptcy Code, a *"good faith* transferee" (emphasis added) is granted a lien on the property for the value of improvement made. In this action, there is some evidence of improvements made by the transferee defendants to the property. But the evidence also clearly demonstrates that the defendants were not transferees in good faith; that they participated in the fraud attendant on the transfer, and all the elements thereof, including actual beneficial retention of the ownership and possession by the debtors.